



COPY

# LEASE

This Lease (hereinafter referred to as the "Lease"), is made and entered into this 4th day of February 1999, by and between EMBRY DEVELOPMENT COMPANY, INC. (hereinafter referred to as "Lessor"), a Georgia corporation with its principal place of business located at 3583-B Chamblee-Tucker Road, Atlanta, Dekalb County, Georgia 30341 and DIPLOMAT CT HOTELS, LLC (hereinafter referred to as "Lessee"), with their principal place of business located at 2100 Parklake Drive NE, Suite A, Atlanta, Georgia 30345-2167.

## Premises

Lessor does hereby rent and lease to Lessee the following described Premises (hereinafter "Premises") located at 3585 Chamblee-Tucker Road, Atlanta, Dekalb County, Georgia: That certain real property described in Exhibit A, which is attached hereto and hereby made a part of this lease, upon which are located certain buildings and improvements which are owned by Lessor, consisting of a 110 guest room motel with office, parking facilities and appurtenances thereto. Lessor also leases to Lessee the real property and sign pediments shown on Exhibit B, which is attached hereto and made a part of this lease, (hereinafter "Off Premises Signs"); Lessor also leases to Lessee the premises located at 3583-R Chamblee-Tucker Road, Atlanta, Dekalb County, Georgia, with dimensions of 28'7" by 18'8", in the Embry Hills Shopping Center (hereinafter "Off Premises Storage Room") as shown in Exhibit C attached hereto and hereby made a part of this lease. Lessor also leases to Lessee such furniture, furnishings, equipment, supplies and other items of personal property used in the operation of the motel owned by Lessor (hereinafter "Personal Property") as described in Exhibit D, which is attached hereto and hereby made a part of this Lease.

## Term

The Term of this Lease shall be for fifteen (15) years, commencing March 1, 1999 and ending February 28, 2014.

## Rental

The annual base minimum rental shall be ███████████████████ ($███████) Dollars, payable ████████████████ ($███████) Dollars per month on the first day of each month in advance. In addition, Lessee hereby agrees to pay Lessor Percentage Rent in an amount equal to fifteen percent (15%) of Lessee's annual Gross Sales (as hereinafter defined) in excess of ███████████ ($███████) Dollars, for each Lease Year as hereinafter defined during the term of this lease. Any and all Percentage Rent due shall be paid to Lessor by Lessee within sixty (60) days from the last day of the preceding lease year. All percentage rent paid shall be deemed additional rent.

Lessee hereby agrees to pay three (3) month's rent for the Lease term at the time of execution of this lease in the amount of ███████████████ ($███████) Dollars, and Lessor hereby acknowledges receipt of said rent for the months of March, April and May, 1999.

## Late Fees

Lessee hereby agrees that rent is due and payable on the first day of each month in advance. In the event the specified monthly rent has not been received at the main office of Embry Development Company, Inc. at 3583-B Chamblee-Tucker Road, Atlanta, Georgia 30341 (P.O. Box 941399, Atlanta, Georgia 31141-0399), by 5:00 PM on the tenth (10th) day of each month during the term of this lease and any extensions thereof, then there shall be imposed as additional rent a late charge in an amount equal to three percent (3%) of the specified monthly rent. For each subsequent five (5) day period that the rent remains unpaid, an additional late charge shall be imposed in an amount equal to one percent (1%) of the specified monthly rent. All late charges hereunder shall be deemed to be additional rent.

## Gross Sales

The term Gross Sales as used in this Lease is hereby defined to mean the gross sales price of all merchandise sold and services rendered in or from the Premises (less refunds and allowances made customers and also less credits made customers for returned merchandise, and less any sales or hotel/motel tax imposed upon Lessee during the term of this lease by National, State, or Local Governments) whether for cash or on credit, and if on credit, regardless of whether collection is actually made. Gross Sales includes, but is not limited to, room rentals, roll-away rentals, extra person charges, charges for long distance calls, charges for movie rentals, vending machine sales, and any service or merchandise of any kind or nature sold at or from the Premises.

## Lease Year

The term Lease Year as herein used shall be the period commencing with the date of the commencement of this lease and terminating at the end of the 12th full consecutive calendar month thereafter and each and every 12 consecutive calendar months period next following.

**Record and Report of Gross Sales**

Lessee, during the life of this Lease, shall maintain and keep, or cause to be maintained and kept, at said Premises, a full, complete and accurate permanent record and account of all sales of merchandise and services and all sums of money paid or payable for or on account of or arising out of the business and all business transactions conducted at or from said Premises by or for the account of Lessee, and such records and accounts and all supporting records at all times shall be open to inspection and audit at said Premises by Lessor and its duly authorized agents or representatives at all reasonable times during ordinary business hours. Lessee shall keep and preserve or cause to be kept and preserved said records for not less than twelve (12) months after the due date and payment of any percentage rental due under the terms hereof.

On or before the fifteenth (15th) day of each calendar month of the term of this Lease, Lessee shall furnish Lessor a statement of gross sales made in and from the Demised Premises during the preceding calendar month.

**Use of Premises**

Premises shall be used for a Days Inn motel and no other purpose. Premises shall not be used for any illegal purpose, nor in violation of any valid regulation of any governmental body, nor in any manner to create any nuisance or trespass. Any change in the franchise or type of motel from a Days Inn must be approved in advance by Lessor, said approval shall not be unreasonably withheld. Lessor acknowledges that the Lessee may change the franchise to a national hotel or motel franchise in the future, with Lessor's prior written approval, which shall not be unreasonably withheld.

**Improvements/Renovations to Premises**

Lessee hereby agrees to make improvements to the leased Premises including, but not limited to the buildings, furniture, fixtures, leased equipment, equipment, signs and landscaping, in an amount not less that ████████████████████████ ($ █████ ) Dollars over a period of time not to exceed thirty (30) months from the date of commencement of this Lease. Lessor agrees to execute lien waivers as to equipment purchases or leases presented by Lessee or Lessee's vendors, provided that Lessee in no way encumbers the real estate or property owned by Lessor.

**Option to Renew**

Lessee is hereby granted an option to renew this lease for two ten (10) year periods, the first option period commencing at the expiration of this lease and the second commencing at the expiration of the first option period, on the same terms and conditions of the initial term, except that there shall be no privilege to renew the term of this Lease for any period of time beyond the expiration of the Options described above. At least six (6) months prior to the expiration of the Initial Term for the first option period and at least six (6) months prior to the expiration of the first option period for the second option period, Lessee shall notify Lessor by United States Certified Mail of its decision on exercising its right to renew the term of this lease.

If Lessee is in default of any term or condition of this Lease on the date of giving said notice, the notice shall not be valid if Lessor has given Lessee notice of the particulars of the default and Lessee fails to cure the default within ten (10) days of the date of the notice of default.

If Lessee fails to provide the six (6) month notification, Lessor will notify Lessee that it is the appropriate time to exercise the said option and give the Lessee an additional ten (10) day period from such notification to exercise said option.

**Utilities**

Lessee shall pay all charges for utilities and services furnished to or used by it, including but not limited to, all water, gas, heat, light, power, telephone service, waste pickup, sewerage and all other services supplied to the premises during the term of this Lease. If Lessee does not pay said charges, Lessor may pay the same, and Lessee hereby agrees to reimburse Lessor upon Lessor's presentation of an invoice for said services, with such reimbursement deemed additional rent.

Lessee hereby agrees to provide adequate sized dumpster or dumpsters for any and all of its refuse for the leased Premises and to ensure that the dumpster or dumpsters are emptied on a frequent basis, and further agrees not to allow any trash or refuse of any kind or nature whatsoever to be placed outside or around the dumpster or dumpsters at any time during the term of this Lease or any extensions thereof.

Lessee further agrees to pay its prorated share of power for the Off Premises Storage Room located at 3583-R Chamblee-Tucker Road and two (2) pole lights located on the Premises leased to Lessee by Lessor, as billed by Lessor on a monthly basis, said power charges for the Off

2

Premises Storage Room and pole lights being a part of charges included for a portion of the Shopping Center canopy lighting.

**Common Areas**
The Premises abut certain other premises also titled in the Lessor's name, including Embry Hills Shopping Center, (hereinafter "Shopping Center"), which is shown in Exhibit E, attached hereto and hereby made a part of this Lease. Lessor grants to Lessee, its employees and invitees a non-exclusive easement for the purpose of ingress and egress to and from the Premises. Lessor shall have the right to honor its obligation to maintain the condition of the Shopping Center so long as Lessor uses its best efforts to minimize any interference with said ingress and egress and so long as a reasonable method of ingress and egress is always maintained. Lessor gives Lessee and its authorized representatives and invitees a non-exclusive irrevocable license to use the common parking areas with others who are entitled to use the common parking areas of the Shopping Center, except that Lessee shall not authorize the parking of tractor trailer trucks, recreational vehicles or vehicles of an over-sized nature that would be unable to park in a standard sized parking space normally used by a standard sized automobile, in said common parking areas. Lessee gives Lessor and its authorized representatives and invitees the non-exclusive right to use the parking areas within the Premises, along with Lessee, its authorized representative and invitees.

**Personal Property**
All furniture, furnishings, equipment and other personal property listed on Exhibit D shall be leased by Lessor to Lessee pursuant to the terms hereof. Said Personal Property shall be surrendered to Lessor upon termination of this lease in a condition equal to or better than when received, normal wear and tear excepted.

Should any items listed in Exhibit D be destroyed, become obsolete or cease to be functional for the use originally intended, Lessee agrees to replace said items with identical or items of equal or better quality than the original items. Lessee agrees to surrender all non-leased furniture, furnishings, equipment and other personal property to Lessor upon termination of this lease, except that all "non-leased" furniture, furnishings, equipment and other personal property shall not be construed to mean furniture, furnishings, equipment and other personal property leased by Lessor to Lessee.

**Alterations**
Lessee may, from time to time, at its own expense, alter, renovate or improve the Premises, provided the same be performed in a good and workmanlike manner, in accordance with accepted building practices, and so as not to weaken or impair the strength or lessen the value of the Premises. Lessee shall make no changes, alterations, or improvements affecting the function or exterior of the Premises without the prior written approval of Lessor, said approval shall not be unreasonably withheld. If Lessee submits requested alterations or improvements to Lessor in writing and Lessor does not respond within ten (10) days of such notification, then in that event, the non-response of Lessor shall mean consent as to the requested alterations or improvements. Any work performed by Lessee or Lessee's agents shall not interfere with the use of the Common Areas by the tenants of the abutting Embry Hills Shopping Center.

All alterations, decorations, additions and improvements made by Lessee shall remain the property of the Lessee for the term of this lease and any extension thereof, but they shall not be removed from the Premises without the prior written consent of Lessor. Upon obtaining the prior written consent of Lessor, Lessee shall remove such alterations, decorations, additions, and improvements which are susceptible of being removed without damage to the Premises and restore the Premises to their original condition, and if Lessee fails to do so, all such alterations, decorations, additions and improvements shall become the property of Lessor.

**Abandonment**
Lessee agrees not to vacate or abandon the Premises at any time during the term of this Lease or any extensions thereof. Should Lessee vacate or abandon said Premises or be dispossessed by process of law or otherwise, such abandonment, vacation or dispossession shall be a breach of this Lease and, in addition to any other rights which Lessor may have, Lessor may remove any personalty belonging to Lessee which remains on the Premises and store the same, such removed and storage to be for the account of Lessee for a period not to exceed six (6) months, and thereafter Lessor may dispose of such personalty, as provided by law.

**Repairs**
Lessee shall, at its sole cost, keep and maintain the Premises, including but not limited to, the public areas, roof and exterior walls of the buildings and all the heating, plumbing, electric and air conditioning systems in good and sanitary order, condition and repair, and at its expense, make all repairs thereto as and when needed to preserve the Premises in good working order and

3

condition. Lessee shall repair all damage to the buildings and the premises caused by removal of Lessee's fixtures, furniture or equipment. All repairs shall be of quality or workmanship at least equal to the original work and construction.

Lessee hereby accepts the Premises and Property as being in good and sanitary order, condition and repair.

If Lessor determines that Lessee has failed to comply with its obligations to make needed repairs and to maintain the Premises and all property covered by this Lease, Lessor shall notify Lessee. If Lessee fails, after ten (10) days notice to proceed with due diligence, to effectuate such repairs, Lessor may proceed to effectuate said repairs, and the expenses incurred by Lessor shall be payable by Lessee to Lessor upon receipt of Lessor's statement to Lessee. Lessee's failure to make material repairs hereunder shall constitute a default under this lease.

**Free From Liens**
Lessee and Lessor covenant each with the other not to permit any lien to be filed against the Premises on account of any non-payment or dispute with respect to labor or materials furnished in connection with any construction, repairs, modifications, alterations or additions to the Premises nor shall the parties permit any lien or attachment to lie against the Premises or any of them for any reason. In the event that the Lessee or Lessor causes or suffers such lien to be filed against the Premises, the responsible party shall within thirty (30) days remove the lien by settling the underlying dispute or taking the necessary steps to bond the lien off the Premises. It shall be a default if the responsible party shall fail for a period for 45 days after notice to settle the underlying dispute or take the necessary steps to bond the lien off the premises.

**Compliance with Governmental Regulations/Maintenance of Licenses and Permits**
Lessee shall, at its sole cost and expense, comply with all of the requirements of all municipal, State, and Federal authorities now in force or which may hereafter be in force pertaining to the Premises, and shall faithfully observe in the use of the Premises all municipal ordinances and State and Federal statutes now in force or which may be in force hereafter.

If any governmental license or permit shall be required for the proper lawful conduct of Lessee's business, then the Lessee, at its own expense, shall duly procure and thereafter maintain such licenses or permits and submit the same to inspection by Lessor. Lessee shall, at Lessee's expense, at all times, comply with the requirements of each such license or permit.

Lessee agrees to take every precaution and whatever action may be necessary to ensure that no rooms on the Premises are rented to any persons for any illegal purpose or use. Should Lessee become aware of any illegal activity, Lessee shall take immediate action to correct same.

**Adult Entertainment**
Premises shall not be used for Adult Entertainment as defined by Dekalb County Ordinances on Adult Entertainment. Violation of this clause will result in immediate cancellation of this lease.

**Destruction of Premises**
In the event of a partial destruction of the Premises during the term of this Lease or any extensions thereof, Lessee shall forthwith repair the same, and replace all Personal Property destroyed or damaged as a result of such destruction, provided such repair of the Premises can be made within one (1) year following such destruction. Such partial destruction shall in no way annul or void this Lease, except that Lessee shall be entitled to a proportionate reduction of Rent while such repairs are being made, such proportionate reduction to be based upon the extent to which such destruction or the making of such repairs shall interfere with the business carried on by Lessee upon the Premises. If such repairs cannot be made in one year, Lessee shall have the option to terminate this lease.

A total destruction of the Premises shall, at the option of Lessee, terminate this lease. Alternatively, Lessee may rebuild and rent shall abate until construction is complete. Lessee must elect whether to rebuild or terminate this lease within thirty (30) days of said total destruction. If Lessee elects not to rebuild, rent shall cease upon date of destruction. If Lessee elects to rebuild, rent shall abate until construction is complete, or eighteen months (18), whichever occurs sooner.

**Assignment and Subletting**
Lessee shall not assign this lease or any interest herein and shall not sublet the Premises or any right or privilege appurtenant thereto without the written consent of Lessor, which shall not be unreasonably withheld. A consent to one assignment or subletting shall not be deemed to be a consent to any subsequent assignment or sublease.

4

Any assignment or sublease by Lessee approved by Lessor shall be only for the same purpose for which the Premises are used by Lessee, and for no other purpose, and in no event shall any assignment or sublease of the Premises release or relieve Lessee from any obligations under this Lease.

## Successors and Assigns

The covenants and conditions herein contained shall apply to and bind the heirs, successors, executors, administrators and assigns of all of the parties hereto; and all of the parties hereto shall be jointly and severally liable hereunder.

## Condemnation

If the whole of the leased Premises, or such portion thereof as will make the leased Premises unusable for the purpose herein leased, be condemned by any legally constituted authority for any public use or purpose, then in either of said events, the term hereby granted shall cease from the time possession thereof is taken by public authorities, and rental shall be accounted for as between Lessor and Lessee as of that date. Such termination, however, shall be without prejudice to the rights of either Lessor or Lessee to recover compensation and damage caused by condemnation from the condemnor. It is further understood and agreed that neither the Lessee nor the Lessor shall have any rights in any award made to the other by any condemnation authority. .

## Hazardous Materials

As of the date of execution of this Lease, Lessor is unaware of any contamination from any hazardous materials or substances of any kind. Lessee hereby agrees that any engineering, testing, sampling or research shall be at the sole cost of Lessee.

Lessee further agrees to return the Premises to Lessor at the termination of this Lease free and clear of any hazardous material or substance contamination.

## Signs

Lessee shall have the right to erect standard Days Inn signs on the Premises and at the locations shown on Exhibit B in such a manner which shall in all ways comply with the requirements of Dekalb County, Georgia. Upon termination of this Lease, Lessee shall remove all signs it has erected, and replace and repair the property as nearly as possible to its original condition. Lessee shall not remove any sign pediments which it has caused to be erected, and at the termination of this Lease, same shall become the property of Lessor. Lessee shall not place or paint any signs upon the walls, canopy or roof of the Premises without the written consent of Lessor which shall not be unreasonably withheld.

## Liability and Property Damage Insurance

Lessee shall, at all times during the term of this lease and any extensions thereof, keep in force, fire and extended coverage insurance on the buildings located upon the Premises, facilities, equipment and other Personal Property installed or owned by Lessor, and all other improvements erected or installed, including any signs, in an amount equal to the replacement cost of such property. Lessor will be named as additional insured and loss payee under said policy.

Lessee shall, at all times during the term of this lease and any extensions thereof, keep in force liability insurance which shall insure against all claims, demands or actions, including any arising out of any alterations or repairs undertaken or authorized by Lessee pursuant to this lease, for damage to person or property, bodily injury, personal injury, or death sustained upon the premises by any guest, licensee, employee, customer or other person. Lessee will cause Lessor to be named as additional insured under said policy. The minimum limits of said policy shall be $2,000,000.00 per occurrence, or as reasonably specified by Lessor from time to time; in addition, Lessee shall maintain a $3,000,000.00 liability insurance umbrella.

Lessor shall at all times during the life of this lease and any extensions thereof keep in force liability insurance and fire and extended coverage insurance for the common areas of Embry Hills Shopping Center against all claims, demands or actions for damage, bodily injury, personal injury or death sustained upon the common areas of Embry Hills Shopping Center by any guest, licensee, employee, customer or other person.

Lessee and Lessor shall, at all times during the life of this lease and any extensions thereof, keep in force and effect worker's compensation insurance covering their respective employees.

Lessee agrees to provide Lessor with a current certificate of insurance or other proof of insurance in amounts as required by this Lease at all times.

5

**Indemnity**

Lessee hereby agrees to defend and hold Lessor exempt and harmless from damage, injury or loss of life to any person or persons, or any damage to the personal property of any person or persons occurring within or upon the Premises, or arising from the use of the Premises, or from the failure of Lessee to keep the Premises in good condition or repair, as herein provided.

Lessor hereby holds Lessee exempt and harmless from any damage, injury or loss of life to any person or persons, or any damage to the personal property of any person or persons occurring within the common areas of Embry Hills Shopping Center, or from the failure of Lessor to keep the common areas of Embry Hills Shopping Center in good condition and repair, as herein provided.

**Taxes**

Lessee covenants and agrees to pay and discharge promptly as the same becomes due and before any delinquency all taxes, assessments, rates, charges, license fees, municipal liens, levies, excises or imposts, whether general or special, ordinary or extraordinary, of every name, nature and kind whatsoever, including all governmental charges of any kind which may be levied, assessed, charged or imposed upon the Premises, Lessee's business operations and its personal property situated in the Premises, during the term of this lease and any extensions thereof, all such taxes and assessments to be prorated between Lessee and Lessor as of the Commencement and Termination Dates of this lease. Lessee shall obtain and deliver to Lessor receipts for all taxes required to be paid by Lessee promptly upon payment thereof.

Anything hereinabove contained to the contrary notwithstanding, Lessee may in good faith contest any tax, assessment, levy, rate or governmental charge which, under the provisions of this Lease, it shall be required to pay. Lessee shall furnish to Lessor copies of any appeal by Lessee of any tax, assessment, rate, charge, license fee, municipal lien, levy, excise or impost.

Lessor warrants that the Real Property is now shown as a specific parcel for property tax assessment purposes upon the records of the Tax Commissioner, Dekalb County, Georgia.

**Default**

A default by Lessee under this Lease shall occur in the event of Lessee's failure to perform any of its obligations under this Lease, including but not limited to payment of rent, taxes and utilities, the procurement and maintenance of insurance, the maintenance and repair of the Premises, and its agreement to abide by any and all rules, regulations and laws from any Federal, State, or Local government. In the event of such default, Lessor may terminate this lease and cause Lessee's removal from the Premises, in accordance with O.C.G.A. Section 44-7-50, and resume possession of the Premises and Personal Property wholly discharged from the terms of this lease.

Lessee's default hereunder shall terminate this lease and any extensions thereof. Upon said termination, Lessor shall have no right to any further rentals, or damages because of non-payment of further rentals.

No default hereunder shall be deemed to have occurred until fifteen (15) days after written notice by United States Certified Mail of such default shall have been given by Lessor to Lessee, and Lessee, within such time, shall have failed to remedy such default. The fifteen day period shall begin on the date the notice is postmarked by the U.S. Post Office.

**Possession**

Lessor shall deliver possession of the Premises to Lessee at the Commencement Date of this lease. Lessee taking possession of the Premises on the Commencement Date shall constitute Lessee's acknowledgement and acceptance that the Premises are in good condition.

**Applicable Laws**

This Lease shall be governed by applicable laws of the State of Georgia.

**Commissions**

Lessee and Lessor hereby agree that no commission or brokerage fee is due any agent, broker or any other party whatsoever.

**Unenforceable Terms**

If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, unless such provisions be mutually dependent, the remainder of this lease shall not be affected thereby and each term, covenant or condition of this lease shall be valid and enforced to the fullest extent permitted by law.

6

**Relationship of Parties**
It is understood and agreed that the relationship of the parties hereto is strictly that of Lessor and Lessee and that Lessor has no ownership in Lessee's enterprise and that this Lease shall not be construed as a joint venture or partnership. Lessee is not and shall not be deemed to be an agent or representative of Lessor.

**Non-Disturbance**
Lessor shall, on the commencement date of the term of this Lease, place Lessee in quiet possession of the Leased Premises, and shall secure the Lessee in the quiet possession thereof against all persons lawfully claiming possession during the entire lease term and any extension thereof.

Any provision, term or condition of this Lease which is, or which may appear to be, to the contrary notwithstanding, Lessor shall at all times and from time to time during the term of this lease, have the express right, power and privilege of pledging, conveying, assigning or mortgaging Lessor's fee simple title in and to the premises and/or Lessor's reversionary right to the Premises upon any termination, for the purpose of obtaining financing, credit, or as security for any financing or extension of credit, provided only that the person or entity accepting such pledge, conveyance, assignment or mortgage as security shall take subject to the rights of Lessee so long as Lessee is not in default hereunder and Lessee, in the event of any foreclosure or deed in lieu of foreclosure or other final conveyance and transfer of Lessor's interest, as aforesaid, shall recognize and attorn to the grantee thereof as "Lessor" under this Lease. Likewise, and to similar effect, Lessor shall at all times and from time to time during the term of this lease and any extensions thereof, have the express right, power and privilege of assigning only the Lessor's interest in this Lease or in the Rent to be paid hereunder.

Either party to this Lease shall at any time and from time to time, upon not less than ten (10) days prior written request by the other party, execute, acknowledge and deliver to such party a statement in writing certifying that this Lease is unmodified and in full force and effect; and stating the dates to which the rent and other charges have been paid in advance. It is expressly understood and agreed that any such statement delivered pursuant to this section may be relied upon by any prospective assignee or sublessee of the leasehold estate, or estates of Lessee, or any prospective purchaser of the estate of Lessor, or any lender or prospective assignee of any lender on the security of the Leased Premises or the fee estate or any party thereof, and any third party.

**Time is of the Essence**
Time shall be of the essence of each provision of this Lease.

**Notices**
All written notices and demands of any kind which either party may require or desire to serve on the other in connection with this Lease shall be in writing and shall be served by registered or certified mail, return receipt requested and addressed to the parties so to be served as follows:

If the party to be served is the Lessor:
　　EMBRY DEVELOPMENT COMPANY, INC.
　　P.O. Box 941399
　　Atlanta, Georgia 31141-0399

If the party to be served is the Lessee:
　　DIPLOMAT CT HOTELS, LLC
　　2100 Parklake Drive NE, Suite A
　　Atlanta, Georgia 30345-2167.

Any notice under this Lease shall be deemed to have been given on the date the notice is postmarked by the United States Post Office.

**Definitions**
Whenever used herein, the singular shall include the plural, the plural the singular, and any gender shall include all genders.

**Purchase Option**
In the event Lessor should decide to sell the Leased Premises as defined by Exhibit A only, separately from the Embry Hills Shopping Center and adjoining properties, then Lessor will notify Lessee of Lessor's intent to sell and Lessor's asking price for said premises. Lessee shall have ten (10) days from the date of said notice to respond to said offer. If Lessee fails to respond within the ten (10) day period, or declines Lessor's offer, Lessor shall have no further obligation to Lessee with regard to any sale of the Leased Premises.

**Miscellaneous**
Lessee acknowledges that Marlene C. Embry, President of Embry Development Company, Inc., is a licensed real estate agent with the Georgia Real Estate Commission.

This Lease, having been executed by Lessor, witnessed and notarized on the day and year first above written, is open for acceptance by Lessee until 5:00 PM EST on the 8th day of February 1999.

Signed, sealed and delivered as
to Lessor, in the presence of:

BARBARA COHEN
Notary Public

Signed, sealed and delivered as
to Lessee, in the presence of:

Brenda Ann McLarty
Notary Public
Notary Public, Paulding County, Georgia
My Commission Expires Jan. 10, 2002

EMBRY DEVELOPMENT COMPANY, INC.

By: _____
    President
LESSOR

DIPLOMAT CT HOTELS, LLC

By: _____
    General member
LESSEE

8

## GUARANTY

GUARANTY to the Lease dated the 4th day of February, 1999, by and between Embry Development Company, Inc. a corporation, as Lessee and Diplomat CT Hotels, LLC, as Lessee, having a business at 3585 Chamblee-Tucker Road, Atlanta, Dekalb County, Georgia.

FOR VALUE RECEIVED, and in consideration for an as an inducement to Lessor making the within Lease with Lessee, the Undersigned, on behalf of himself, his legal representatives, heirs, successors and assigns, guarantees to Lessor, Lessor's successors and assigns the full performance and observance of all the provisions therein provided to be performed and observed by Lessee, including the rules and regulations, without requiring any notice of non-payment, non-performance, or non-observance, or proof, or notice, or demand, whereby to charge the Undersigned therefor, all of which the Undersigned Guarantor hereunder shall not be terminated, affected or impaired by reasons of the assertion by Lessor against Lessee of any of the rights or remedies reserved to Lessor pursuant to the provisions of the within Lease. The Undersigned further agrees that this Guaranty shall remain and continue in full force and effect for the Initial Term of this Lease, commencing March 1, 1999 and terminating February 28, 2014. As a further inducement to Lessor to make this Lease and in consideration thereof, Lessor and the Undersigned agree that in any action or proceeding brought by either Lessor or the Undersigned against the other on any matters whatsoever arising out of, under or by virtue of the terms of this Lease or of this Guaranty, that Lessor and the Undersigned shall and do hereby waive trial by jury and shall agree to arbitrate any disputes by and between the Undersigned or the parties. In the event Lessor incurs any expenses in the enforcement of this Guaranty, whether legal action be instituted or not, the Undersigned agrees to be bound by the terms of the arbitration and agrees that the arbitrator shall award attorneys fees for the winning party.

WITNESSES:

_____

_____

_____

Date: _Feb. 4th 1999_

GUARANTOR:

_____

R.C. PATEL
Address:
_2100  PARKLAKE DR_
_ATLANTA_
_GA  30345_

LESSOR:
EMBRY DEVELOPMENT COMPANY, INC.

By: _____
Marlene C. Embry, President
Embry Development Company, Inc.
P.O. Box 941399
Atlanta, Georgia 30341

9



EXHIBIT _A_

INITIALED:

Lessor:

Lessee:

EXHIBIT "A"

(2.1372 Acres Located in Embry Hills Shopping Center)

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 285 of the 18th District of DeKalb County, Georgia, and being more particularly described as follows:

TO FIND THE TRUE POINT OF BEGINNING begin at the concrete right-of-way marker located at the southwesterly most point of the mitred intersection of the northeasterly right-of-way line of I-285 with the southeasterly right-of-way line of Chamblee-Tucker Road; running thence along said northeasterly right-of-way line of I-285 South 13 degrees 38 minutes 13 seconds East a distance of 838.50 feet to a point on said northeasterly right-of-way line of I-285; continuing thence along said northeasterly right-of-way line of I-285 South 13 degrees 50 minutes 28 seconds East a distance of 86.63 feet to a point; thence North 86 degrees 38 minutes 20 seconds East a distance of 115.48 feet to an iron pin set, which pin now marks the TRUE POINT OF BEGINNING and from said TRUE POINT OF BEGINNING an arch distance of 105.15 feet, said arch being subtended by a chord bearing North 53 degrees 11 minutes 55 seconds West and having a chord distance of 96.74 feet, which arch is the back of a concrete curb, thence North 13 degrees 2 minutes 9 seconds West a distance of 150.35 feet to an iron pin; thence North 4 degrees 46 minutes 28 seconds West a distance of 56.91 feet to an iron pin; thence North 87 degrees 48 minutes 13 seconds East a distance of 279.55 feet to a nail set; thence South 02 degrees 20 minutes 32 seconds East a distance of 59.71 feet to a nail set; thence North 87 degrees 32 minutes 53 seconds East a distance of 114.19 feet to a 1/2" rebar; thence South 02 degrees 23 minutes 47 seconds East a distance of 68.92 feet to a nail set; thence North 87 degrees 29 minutes 42 seconds East a distance of 10 feet to a nail set; thence South 02 degrees 19 minutes 08 seconds East a distance of 64.23 feet to a nail set; thence South 62 degrees 43 minutes 12 seconds East a distance of 9.52 feet to a nail set; thence South 02 degrees 47 minutes 40 seconds West a distance of 62.53 feet to a nail set; thence South 86 degrees 38 minutes 20 seconds West a distance of 301.16 feet to an iron pin, which iron pin marks the true point of beginning.  The foregoing property is more particularly shown on a survey of Motel 1 for Embry Development Company made by Precision Planning, Inc. dated June 21, 1988.

INITIALED:

Lessor:

Lessee:



SITE PLAN

SCALE - 1"=100'

REVISED    JANUARY 15 1980

EXHIBIT "B"



SITE PLAN
SCALE - 1"·100'
REVISED.   JANUARY. 15 1980.

DIRECTIONAL SIGN

EMBRY HILLS SHOPPING CENTER
FOR
EMBRY DEVELOPMENT CO., INC.

**EXHIBIT** "C"

INITIALED:

Lessor

Lessee:

EXHIBIT "D"

(Inventory of Furniture, Fixtures, and Equipment)



EXHIBIT "E"

INITIALED:

Lessor:

Lessee: