ED SGAA1576B
LEASE
LEGAL
CONST
ORIGINAL DOCUMENT
DO NOT REMOVE
FROM OFFICE

Revised 08/18/10

## FIRST AMENDMENT TO LEASE

| Project ID: SGAA1576B | Lease ID: LDAYSIN00 | Tenant ID: TDAYSIN00 |

THIS FIRST AMENDMENT TO LEASE made as of the ___1___ day of ___Dec___, 2010, by and between EMBRY VILLAGE S.C., LLC (hereinafter referred to as "Landlord") and DIPLOMAT CT HOTELS, LLC (hereinafter referred to as "Tenant"), which terms "Landlord" and "Tenant" shall include the successors and assigns of the respective parties.

### WITNESSETH:

WHEREAS, by Lease Agreement dated February 4, 1999, Embry Development Company, Inc., predecessor in interest to Landlord, did lease and demise unto Tenant certain premises (the "Leased Premises") in the Embry Village Shopping Center located in Atlanta, Georgia, as more particularly described in the Lease Agreement (said Lease Agreement as may have been amended, modified and assigned shall be hereinafter collectively referred to as the "Lease"); and

WHEREAS, the parties hereto desire to further amend the Lease.

NOW, THEREFORE, in consideration of the premises and the sum of Ten and no/100 ($10.00) Dollars and other good and valuable considerations, in hand, paid by Tenant to Landlord, the receipt and sufficiency of which is hereby acknowledged, it is mutually agreed as follows:

1.    The Tenant has elected not to exercise its option rights under the Lease. Accordingly, the paragraph of the Lease entitled "Option to Renew" is hereby deleted in its entirety and is of no further force and effect.

2.    The term of the Lease is hereby extended for an additional period of four (4) years commencing as of March 1, 2014 so that the term of the Lease shall now expire on February 28, 2018 (the "Expiration Date"). Tenant agrees and acknowledges that there are no options to extend the term of the Lease beyond the Expiration Date.

3.    Base Rent Reduction / Arrears.

(A) Notwithstanding the Rental set forth in the paragraph of the Lease entitled "Rental", commencing on June 1, 2010 and continuing through and including February 28, 2018 (the "New Lease Expiration Date"), Tenant's annual Rent and Gross Sales Base shall be as follows:

| LEASE YEAR | ANNUAL BASE MINIMUM RENTAL | MONTHLY MINIMUM RENTAL | GROSS SALES BASE |
|---|---|---|---|
| 06/01/10 – 02/29/12* | | | |
| 03/01/12 – 02/28/13 | | | |
| 03/01/13 – 02/28/14 | | | |
| 03/01/14 – 02/28/15 | | | |
| 03/01/15 – 02/28/18* | | | |

* More than a full Lease Year.

(B). Arrears. Tenant acknowledges that the sum of ▮▮▮▮▮ is due and owing under the Lease (the "Total Arrears") as of May 31, 2010. Other charges may have accrued but have not yet been billed. The Total Arrears is comprised of outstanding rental arrears under the Lease in the amount of ▮▮▮▮▮ and legal fees in the amount of ▮▮▮▮ Tenant shall pay to Landlord, commencing with Tenant's Rent for the month of June, 2010 and continuing through and including Tenant's Rent for the month February, 2018, simultaneously with Tenant's payment of monthly Rent, the sum of ▮▮▮▮▮▮ ▮▮▮▮▮▮ ($▮▮▮▮) each month, as additional Rent; and failure to timely pay same shall constitute a default under the Lease. Furthermore, in the event Tenant, at any time prior to paying all the Arrears: (i) defaults under the Lease, or (ii) seeks to assign, sublet, or otherwise transfer its interest in and to

1

the Lease (but nothing contained herein shall grant Tenant such a right except as expressly set forth in, and in accordance with, the terms of the Lease), then the outstanding balance of the Arrears shall be immediately due and payable.

(C)  Nothing contained herein shall have any affect on Tenant's continuing obligation to pay all other rent and other charges (such as common area maintenance costs, insurance costs, real estate taxes, or utility charges) due or to become due under the Lease at any time, except as may be otherwise expressly set forth herein.  The aforementioned reduction in Rent and Arrears repayment is intended exclusively for the benefit of the Tenant named herein and shall not be available to any successor, assignee, subtenant or transferee of the Tenant named herein.  Furthermore, to the extent that under the Lease, Tenant is entitled to any tenant improvement or construction allowance or reimbursements from Landlord, Tenant agrees that any such amounts due Tenant will be first applied by Landlord to the amount of any Rent which has not been paid to Landlord (which includes, but is not limited to any Rent which Landlord hereby has agreed to defer, abate or reduce) with any remaining balance paid to Tenant after Landlord has fully recovered the Rent which it was entitled to receive under the Lease as modified hereby.

(D)  The primary consideration for Landlord's agreement to reduce Tenant's Rent and grant Arrears repayment as provided herein is Tenant's covenant that: (i) it will continuously be open and operating for business in the Shopping Center during the hours of at least 11:00 A.M. through 6:00 P.M. six (6) days per week, subject to Unavoidable Delays (hereinafter defined), and (ii) it will not default under the Lease.  In the event Tenant fails to be continuously be open and operating for business during the aforesaid days and hours, or in the event Tenant defaults under the Lease, Article 2(A) and (B) hereof shall be deemed null and void, Tenant shall be responsible for all of the Rent and Arrears provided in the Lease as if this Amendment had never been executed, and Tenant will pay to Landlord any deficiency in Rent paid pursuant to this Amendment. The term "Unavoidable Delays" shall mean where either party hereto is required to do any act but is untimely in completing the act, then the time attributable directly to delays caused by an Act of God, hurricane, tornado, rain, snow, cold or other weather, war, civil commotion, fire or other casualty, labor difficulties, or shortages of labor, materials or equipment, government regulations or other causes beyond such party's reasonable control shall not be counted in determining the time during which such act is to be completed.  In any case where work is to be paid for out of insurance proceeds or condemnation awards, due allowance shall be made for delays in the collection of such proceeds and awards.  However, in no event shall Unavoidable Delays be applicable to excuse or permit delay of the time for Tenant to pay Rent or other money or to obtain and maintain insurance policies.

(E)  Furthermore, Tenant will keep this Amendment and all information contained herein strictly confidential and will not disclose any such information to any person or entity.  In the event Tenant discloses the existence of this Agreement, or any information contained herein, to any person or entity, then, in addition to all rights and remedies which Landlord may have at law or in equity, Article 1(A) and (B) hereof shall be deemed null and void, Tenant shall be responsible for all of the Rent provided in the Lease as if this Amendment had never been executed, and Tenant will pay to Landlord any deficiency in Rent paid pursuant to this Amendment.  In further consideration of the aforementioned Rent reduction and Arrears repayment, Tenant hereby irrevocably waives its right to exercise any remaining renewal options or rights to extend the Lease Term as may be set forth in the Lease, all of which are hereby expressly deleted from the Lease and are of no further force or effect.

(F)    Notwithstanding anything contained in the Lease to the contrary, Tenant shall not be permitted to assign, sublet or otherwise transfer or encumber any of its interest in this Lease or the Leased Premises without first obtaining the prior written consent of Landlord, which may be withheld in Landlord's sole discretion.  In the event of any such attempted assignment, subletting or other transfer, Articles 3(A) and 3(B) hereof shall be deemed null and void, Tenant shall be responsible for all of the Rent provided in the Lease as if this Amendment had never been executed, and any deficiency in Rent paid pursuant to this Amendment shall immediately become due and payable.

4. Notwithstanding anything contained herein to the contrary, Landlord shall have the right to terminate the Lease at any time during the term of the Lease upon not less than ninety (90) days written notice to Tenant.  In the event Landlord terminates the Lease, Tenant shall be required to pay Landlord, within thirty (30) days after Tenant receives Landlord's termination notice, any deficiency or balance

remaining in Base Rent paid pursuant to Article 3(A) of this Amendment. Tenant shall then have no further obligations under the Lease or this Amendment which accrue after the later of the termination date set forth in the said notice or the date Tenant vacates the Leased Premises in accordance with the Lease.

5. Bankruptcy. Tenant hereby acknowledges and agrees that if it subsequently becomes a debtor-in-possession in a chapter 11 bankruptcy case, or a debtor in a chapter 7 bankruptcy case the following provisions shall apply: (1) if the Lease is rejected in such case, Landlord shall have (i) an administrative claim against Tenant for the difference between the reduced rental amounts set forth herein and the rental amounts set forth in the Lease as if this agreement had never been executed, and (ii) the right to file a proof of claim for rejection damages pursuant to Section 502(b)(6) of the Bankruptcy Code based on the base or minimum rent due under the Lease as if this Amendment had never been executed; and (2) Tenant shall not oppose, object or otherwise contest any motion by Landlord which seeks to lift the automatic stay under 11 U.S.C. § 362 in connection with this Amendment; and (3) Tenant waives all protections and benefits of the automatic stay under 11 U.S.C. § 362 and waives and releases all rights to oppose, object or contest any motion by Landlord relating thereto, and any such motion shall be treated as unopposed by the Tenant and Landlord shall conclusively be deemed to have satisfied the requirement of "cause" under 11 U.S.C. § 362. Tenant acknowledges that it may be waiving and releasing a potentially valuable future right in connection with the automatic stay. However, Tenant has been represented by counsel in these negotiations and has made an informed business judgment that the benefits and consideration received by Tenant in this Amendment far outweigh the potential burden of waiving the automatic stay. Tenant further acknowledges that this provision is not "boiler-plate" language but was rather specifically bargained for by the parties and that substantial consideration was given by Landlord to Tenant for this provision. If this provision were not in this Amendment, the economic terms would have been less favorable for Tenant.

6. Miscellaneous.

(A) Tenant's address for notice purposes is: 2100 Parklake Drive, NE, Ste. A, Atlanta GA 30345, Attn.: R.C Patel and Tenant's Telephone No. is (770) 938-2060; and Landlord's address for notice purposes is: c/o Kimco Realty Corporation, 3333 New Hyde Park Road, Suite 100, P.O. Box 5020, New Hyde Park, NY 11042-0020.

(B) It is mutually understood and agreed that the Lease shall be and remain in full force and effect, as modified and amended hereby, and Landlord and Tenant hereby ratify and confirm the Lease as amended hereby. Without limitation of the foregoing, Landlord hereby confirms its granting of the Leased Premises to Tenant, and Tenant hereby confirms its acceptance of the Leased Premises on all of the terms and conditions of the Lease as hereby amended.

(C) If Tenant is not an individual, the person signing this document on behalf of Tenant represents (by such signature) that he or she has been duly authorized by Tenant to execute this document and that such signature creates a binding obligation of Tenant.

(D) Tenant acknowledges that, no default exists on the part of Landlord under the Lease as of the date hereof.

(E) In the event of a discrepancy between the Lease and this Amendment, this Amendment shall prevail. If not defined herein, all capitalized terms used in this document shall have the meaning ascribed to them in the Lease unless the context otherwise requires. This Amendment contains all of the agreements of the parties hereto with respect to the matters contained herein, and no prior agreement (other than the Lease), arrangement or understanding pertaining to any of such matters shall be effective for any purpose.

(F) In the event Landlord has or initiates a uniform HVAC maintenance program or trash removal program for the Shopping Center, Tenant agrees, at Tenant's expense, to participate in such program(s) and use Landlord's designated contractor(s), provided their prices are competitive with other contractors in the region. Throughout the entire Lease Term Tenant shall make all repairs to the HVAC

3

system serving the Leased Premises required to keep same in good working order, failure of which shall entitle Landlord to make such repairs at Tenant's expense.

(G) No Broker. Tenant represents and warrants to Landlord that it has not dealt with any broker in connection with this Amendment and Tenant does hereby agree to defend, indemnify and hold Landlord harmless of and from any claim of or liability to any broker, finder, or like agent with whom Tenant may have dealt in connection with this transaction.

(H) OFAC. Tenant represents and warrants to Landlord that neither Tenant nor any affiliate or representative of Tenant (i) is listed on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, Department of the Treasury ("OFAC") pursuant to Executive Order number 13224, 66 Federal Register 49079 (September 25, 2001) (the "Order"); (ii) is listed on any other list of terrorists or terrorist organizations maintained pursuant to the Order, the rules and regulations of the OFAC or any other applicable requirements contained in any enabling legislation or other executive orders in respect of the Order (the Order and such other rules, regulations, legislation or orders are collectively called the "Orders"); (iii) is engaged in activities prohibited in the Orders; or (iv) has been convicted, pleaded nolo contendere, indicted, arraigned or detained on charges involving money laundering or predicate crimes to money laundering.

IN WITNESS WHEREOF, the Landlord and Tenant have executed this instrument as of the day and year first above written.

LANDLORD:                                                           WITNESSES:
**EMBRY VILLAGE S.C., LLC**
By: Embry Village Holdco, LLC, Sole Member
By: Kimco Income Fund II, L.P., Sole Member
By: Kimco Income Fund II GP, Inc., General Partner

By:_____
Name:   Paul Puma
Title:   Vice President
Date:   1/12/11

TENANT:                                                           WITNESSES:
**DIPLOMAT CT HOTELS, LLC**

By:_____
Name:
Title:   CEO
Date:   RC/ah   12-7-70

**ACCEPTED AND AGREED:**

GUARANTOR:                                                        WITNESSES:

_____
**R.C. PATEL**
Soc. Sec. No.: _____
Date:

## ACKNOWLEDGMENT FOR TENANT

STATE OF GEORGIA)
                ) ss:
COUNTY OF FULTON )

       Before me, the undersigned, a Notary Public in and for the State and County aforesaid, an officer duly authorized to take acknowledgments, personally appeared __RC PATEL__ known to me to be the person described in and who as__ CEO __ of **DIPLOMAT CT HOTELS, LLC**, a limited liability company (the "LLC"), executed the foregoing instrument on behalf of the LLC; and he acknowledged before me that he executed this instrument as a member of the LLC in name of and on behalf of the LLC; that this act was done by authority of the LLC for the uses and purposes set forth in the instrument; and that the foregoing instrument is the free act and deed of the LLC.

       IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, this 22 ND day of __DECEMBER__, 2010, in this State and County.

My Commission expires:__ 9-8-12 __

_____
Notary Public
(Notarial Seal)

## ACKNOWLEDGEMENT OF GUARANTOR:

State of GEORGIA )
             )ss.:
County of FULTON )

       On the 22 ND day of __DECEMBER__ in the year 2010 before me, the undersigned, a Notary Public in and for said State, personally appeared __RC PATEL__, personally known to me to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

12/21/2010 LT C:\USERS\MARY\DOCUMENTS\REVISED 1ST AMENDMENT (1-DPXZE) DIPLOMAT CT HOTELS LLC 1576B EXECUTION REVISED.DOCX