**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| J.H.,<br><br>    Plaintiff,<br><br>v.<br><br>CT HOTELS, LLC, and DIPLOMAT CT HOTELS, LLC,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:26-cv-01430-VMC |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS</u>

Defendants do not dispute that Plaintiff has pleaded a TVPRA claim under 18 U.S.C. § 1595(a). For purposes of this motion at least, that means that Plaintiff adequately alleged that Defendants knowingly benefited from and participated in ventures that they knew or should have known criminally sex-trafficked Plaintiff. Critically, that means she has pleaded the predicate *criminal* violation of § 1591 required to bring a § 1595(a) claim. Having conceded that, Defendants nevertheless argue that the very same facts do not support a claim under 18 U.S.C. § 2255 ("Masha's law") or a public nuisance claim. This makes no sense, particularly because Plaintiff's § 2255 claim requires the same predicate violation of § 1591.

In support of her federal civil claims, Plaintiff alleges that Defendants and their employees knowingly facilitated sex trafficking by providing her, a minor child, and her trafficker motel rooms in exchange for cash, brought towels and supplies that furthered her trafficking, sold condoms used during the sale of a child for sex, rented rooms in other people's names because they knew J.H. was too young to rent one herself, repeatedly did business with known sex-traffickers, interacted with Plaintiff again and again while she was perceptibly underage and being sold for sex, and implemented policies to conceal trafficking and other illegal activities at the motel. Doc. 1, ¶¶ 13–27, 29–30, 84. These and other allegations in Plaintiff's complaint sufficiently state civil claims under §§ 1595(a) and § 2255, as well as for public nuisance. Defendants' motion should be denied.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But "intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are

construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

## BACKGROUND

From 2013, when she was only fourteen years old, until 2015 Plaintiff J.H. was repeatedly trafficked and sold for sex at Defendants' Motel 6 formerly located at 3585 Chamblee Tucker Road, Atlanta, Georgia. Doc. 1, ¶¶ 1, 11–12, 82. Over the course of a year or more, she was forced to have sex with as many as twenty-five buyers each day, and she was one of roughly ten to fifteen girls— including other minors—being sold for sex at the motel. *Id.*, ¶ 26. "On a given day, a hundred or more buyers of sex would come and go from the Motel 6." *Id.*, ¶ 27. Plaintiff and other girls being sold for sex wore revealing clothing typical of such activity in plain view of Defendants' staff. *Id.*, ¶¶ 23–27. Many of them, like J.H., were perceptibly under 18 years old. *Id.*, ¶ 11, 18, 22, 24, 82.

At best, Defendants knowingly made money from renting a room where an obviously underage girl, J.H., was harbored and sold for sex and by selling her condoms, all while having ample reason to know she was being sold as a child for sex at Defendants' motel. But at worst Defendants not only profited from Plaintiff's sex trafficking without doing anything about it, they directly facilitated it. Defendants' housekeeping and front-desk staff brought extra towels and linens to J.H.'s room at the trafficker's request, "thereby facilitat[ing] J.H.'s trafficking[.]" *Id.*, ¶ 13. Staff regularly serviced the room

3

where they saw "a dozen or more used condoms in trash cans" and saw the 14-year-old J.H. "dressed half-naked" in "fishnet, lingerie, shear fabric, booty shorts," and similar clothing typical of girls being sold for sex. *Id.,* ¶ 14. The staff were familiar with J.H.'s trafficker, knew he rented the room where J.H. was sold for sex and on "multiple occasions" interacted and spoke with him while they knew he was trafficking J.H. *Id.,* ¶¶ 15, 18, 20, 22, 24. They did all this "so that Plaintiff could be sold for sex as a minor at the Motel 6." *Id.,* ¶ 57.

Defendants knew "J.H. was a minor who was being sold for sex." *Id.,* ¶ 18 Staff knew "[f]rom her clothing, demeanor, young age, and recurring purchase of condoms[.]" *Id.,* ¶ 20. Most damningly, Defendants knew J.H. was too young to rent a room in her own name because she had no identification. *Id.,* ¶ 22. Instead of responding to this obvious sign of sex trafficking by intervening or calling the police, or at the least, refusing to rent a room to a minor, Defendants sent her "to find anyone with an ID" so they could rent the room to her in the name of someone old enough to do so—even when that meant sending her "to ask a random person in the parking lot for their ID." *Id.*

Defendants knowingly benefited from J.H.'s child trafficking because they knew they earned "revenue generated by the operation of the Motel 6, including the revenue generated for the room in which Plaintiff was trafficked" in the form of "room-rental fees and other concessions." *Id.,* ¶¶ 55. The Motel 6 was demolished in or around 2016, *id.,* ¶ 41, bringing an end to the property's

use as a hub for sex trafficking. But the blighting effects are far from over—

they "continue to harm the public to this day." *Id.*, ¶ 74.

**ARGUMENT**

**I.    Plaintiff states a claim under Masha's Law, 18 U.S.C. § 2255.**

Plaintiff has alleged sufficient facts to support a civil claim under 18

U.S.C. § 2255, which in relevant part provides:

> Any person who, while a minor, was a victim of a violation of [18 U.S.C. §] . . . 1591. . . and who suffers personal injury as a result of such violation . . .  may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages . . . .

Section 2255 provides *expansive* remedies and procedural protections to a

specifically identified class of minor crime victims, including sex trafficking

survivors like Plaintiff. But it does not identify—or limit—the class of civil

defendants. Section 2255's expansive causation-based remedies readily

encompass claims against defendants under established civil-liability theories

for "personal injury," like beneficiary liability under 18 U.S.C. § 1595. *A.M. v.*

*Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 795 (S.D. Ohio 2024).

Properly understood, § 2255 has two basic elements: (1) the plaintiff was a

minor while a victim of an enumerated crime—here, sex trafficking under

§ 1591, and (2) the plaintiff suffered "personal injury as a result" of such

criminal trafficking for which she seeks a remedy.

Defendants do not dispute that Plaintiff has alleged these elements—*i.e.*, she was a minor victim of § 1591 sex trafficking and suffered personal injury as a result. Thus, Defendants theories for dismissal lack merit.

A.   Plaintiff's § 2255 claim is based on the same predicate facts as her uncontested § 1595(a) claim.

As a threshold issue, by not moving to dismiss Plaintiff's § 1595(a) claim, Defendants acknowledge that Plaintiff adequately alleged that she was a "victim of a violation of [Chapter 77 of Title 18]" as required to bring a § 1595(a) claim. Plaintiff alleges that she was sold for sex in violation of § 1591(a)(1) by one or more traffickers at Defendants' hotel and that the hotel knowingly profited from participating in that venture "knowing, or . . . in reckless disregard of the fact" that she was a minor being sold for sex in violation of § 1591(a)(2). Doc. 1, ¶¶ 54–59, 60–64, 82–84. Defendants do not contest that these allegations are sufficient for her § 1595(a) claim. Since these allegations demonstrate the same predicate criminal violation required in § 2255, Defendants argument that they are insufficient should be rejected.

B.   Plaintiff can sue Defendants as beneficiaries under § 2255.

Section 2255 provides for perpetrator *and* beneficiary liability. Contrary to Defendants' argument, § 2255's text does not define which civil defendants may be sued for injuries resulting from enumerated criminal violations. "Statutory interpretation begins and ends with the text of the statute so long

6

as the text's meaning is clear." *Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir. 2008). The plain text of § 2255 does not restrict civil suits to just perpetrator claims (or any other limited class of defendants). Rather, "the plain language of § 2255 provides only that a minor victim of enumerated sex offenses 'may sue in any appropriate' district court; the statute does not specify against whom that lawsuit may be brought." *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012) (citing § 2255).

Simply put, § 2255 defines a plaintiff—who *may sue*—but not a defendant—who *may be sued*. Proper plaintiffs are victims of various enumerated criminal statutes. Section 2255 provides trafficking victims various protections and a civil cause of action for "personal injury" suffered "as a result of" trafficking. The statute is limited only by the plaintiff's victimization and resulting injury, not which civil defendants may be sued.

Defendants' narrowing of § 2255 to only perpetrator claims conflicts with settled principles of statutory interpretation. *First*, Defendants erroneously invite the Court to rewrite the statute. "[C]ourts have no authority to alter statutory language" or "to add to or alter the statutory language to require what Congress did not." *U.S. v. Stevens*, 997 F.3d 1307, 1315 (11th Cir. 2021)) (alteration in original) (quoting *Silva-Hernandez v. U.S.C.I.S.*, 701 F.3d 356, 361 (11th Cir. 2012) (per curiam))). Ignoring § 2255's obviously expansive text, Defendants would add words to § 2255 that Congress did not include: "may sue

*the perpetrator*" or similar language. "Had Congress intended to limit liability in this respect, it could have done so by including such qualifying language in the statute." *Jane Doe No. 8*, 860 F. Supp. 2d at 1340. For example, Congress textually confined § 1595(a) to suits only against perpetrators and beneficiaries. In contrast, § 2255 contains no similar textual limitation.

Defendants' narrowing construction also contravenes the principle that "[a]s a general matter, courts eschew narrow interpretations of remedial statutes. Instead, remedial statutes are normally accorded broad construction in order to effectuate their purpose." *Jones v. MARTA*, 681 F.2d 1376, 1380 (11th Cir. 1982). Section 2255 has a "broad remedial purpose" that "would appear to counsel against limiting the scope of civil liability." *Jane Doe No. 8*, 860 F. Supp. 2d at 1340. To effectuate Congress's intent, Defendants' revisionist and constricting construction must be rejected.

In contrast to Defendants' contra-textual argument, Plaintiff's § 2255 claim harmonizes both its text and purpose. Plaintiff has alleged that she is a victim of criminal trafficking under § 1591 committed by at least her trafficker, as well as Defendants. A criminal violation by either/both brings Plaintiffs within the class of victims authorized to sue under § 2255. (Again, Defendants do not dispute she is such a proper victim-plaintiff.) Plaintiff seeks a § 2255 civil remedy for "personal injury" sustained "as a result of" her criminal

trafficking at Defendants' Motel 6—namely, the personal injury resulting from Defendants' knowingly benefitting from her criminal sex trafficking.

Section 2255 imports analogous beneficiary liability like that provided in § 1595(a). In § 1595(a), Congress established a personal injury-type cause of action reflecting its judgment that a knowing sex-trafficking-beneficiary's conduct is sufficiently connected to a victim's injuries to warrant civil accountability. In other words, a violation of §1595(a) by a knowing beneficiary, like Defendants, is a "personal injury" suffered by a plaintiff-victim "as a result of" criminal section trafficking violative of § 1591, for which § 2255 authorizes a civil remedy.

Section 2255's "as a result of" language imposes nothing more than a but-for causal connection between the § 2255 defendant's conduct—here, knowingly benefiting from participating in a venture they knew or should have known violated § 1591—and the injuries suffered by the victim-plaintiff. *See Brown v. Gardner*, 513 U.S. 115, 119 (1994) (holding that "as a result of" "impose[s] the requirement of a causal connection"); *Murakami v. United States*, 398 F. 3d 1342, 1352 (Fed. Cir. 2005) (collecting cases interpreting "as a result of" to imply a simple causation requirement); *Cause*, AMERICAN HERITAGE DICTIONARY (5th ed. 2022). Here, Plaintiff alleged that her injuries were the "result of" Defendants' beneficiary liability—the same conduct

establishing their liability under the TVPRA.[1] (Again, Defendants do not dispute causation as it relates to their alleged § 1595(a) TVPRA liability.)

Interpreting § 2255 as coextensive with § 1595(a) beneficiary-liability, in addition to textual fidelity, respects statutory context. Courts regularly refer to statutory context and common statutory schemes when interpreting statutes with a "common raison d'etre"—*i.e.*, purpose. *Northcross v. Bd. of Edu. of Memphis City Schools*, 412 U.S. 427, 428 (1973) (per curiam); *see Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013) (analyzing statute by relying upon "statutory context strongly favor[ing]" the Court's interpretation); *United States v. Penn*, 63 F.4th 1305, 1313 (11th Cir. 2023) (interpreting statutes consistently where they "address the same problem in the same context"); *Ala. Educ. Ass'n v. State Superintendent of Edu.*, 746 F.3d 1135, 1158–59 (11th Cir. 2014) (explaining *in pari materia* canon).

Section 2255 should be interpreted in light of its common purpose with § 1595 of compensating victims of sex trafficking (and other crimes). *See Ala. Educ. Ass'n*, 746 F.3d at 1158 (explaining common purpose). Sound statutory construction allows § 1595(a) to illuminate § 2255's remedial elements,

---

[1] Other courts have articulated § 2255's elements, including causation, in terms of Article III standing. *See A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 795 (S.D. Ohio 2024) (holding that § 2255 requires only that the plaintiff allege the traditional requirements of standing—injury in fact, causation, and redressability."). Plaintiff's allegations meet such a standard by showing Defendants caused her harm redressable by damages.

including the claims and defendants subject to § 2255's provisions, and aligns with the broad remedies § 2255 affords crime victims like Plaintiff.

Other decisions within the Eleventh Circuit are in accord. As another district court observed, "[n]othing in § 2255 limits claims under the statute to only perpetrators." *Bates v. Seuqel Youth & Family Servs., LLC*, 2:23-CV-01063-RDP, 2025 WL 2917756, at *5 (N.D. Ala. Oct. 14, 2025); *see also Bates v. Sequel Youth & Family Servs., LLC*, 2:23-CV-01063-RDP, 2026 WL 86833, at *5 (N.D. Ala. Jan. 12, 2026); *Jane Doe No. 8*, 860 F. Supp. 2d at 1340. Consistent with the foregoing, it follows that § 2255 provides a civil claim against both perpetrators and beneficiaries of enumerated crimes, including violations of § 1591 as Plaintiff has sufficiently alleged here. This Court should join its sister districts by rejecting Defendants' contra-textual position and allowing Plaintiff's beneficiary claim under § 2255 to proceed.

C.    <u>Plaintiff also alleges Defendants' § 2255 liability as perpetrators.</u>

Even accepting Defendants' (incorrect) premise that § 2255 claims are limited to perpetrators, Plaintiff has alleged that Defendants are § 1591 perpetrators because they actively facilitated J.H.'s and other minor's sex trafficking at the Motel 6 and knowingly benefitted from doing so. This provides an *independent* (though redundant) basis for Plaintiff's § 2255 claim.

Plaintiff repeatedly alleges under § 1591(a)(1) that Defendants illegally "harbore[ed]" her at the Motel 6 where she was sold for sex, Doc. 1, ¶¶ 9, 12–

11

17, 20, 22, 55–59, 82–85, and under § 1591(a)(2) that Defendants criminally benefitted from participating in a venture[2] with her traffickers, who violated § 1591(a)(1), *id.*, ¶¶ 9, 13, 18–31, 54–59, 82–86. She alleges Defendants did so "knowing" or "in reckless disregard of the fact" that she was a minor forced to engage in commercial sex and subject to "force, threats of force, fraud, [or] coercion[.]" 18 U.S.C. § 1591(a)(2). Even though she need only plead such knowledge generally, *see* FED. R. CIV. P. 9(b), Plaintiff has alleged specific facts that directly and by inference demonstrate Defendants' knowledge. Motel 6 staff were familiar with J.H.'s trafficker and knew he rented the room to sell J.H. for sex, Doc. 1, ¶¶ 15, 57; knew that her trafficker assaulted her, *id.*, ¶¶ 16–17; serviced the room where J.H. was harbored and sold for sex by providing necessary supplies like towels and linens and observing a dozen or more used condoms in the room with a 14-year-old dressed consistent with her fate as a trafficking victim, *id.* ¶ 14; and sold J.H. condoms and helped her rent rooms in others' names because she was too young to do so herself, *id.* ¶¶ 20, 22. These facts sufficiently plead Defendants' criminal liability under § 1591.

Defendants' perpetrator status is buoyed by other courts' determinations on materially similar facts that hotel operators can criminally violate § 1591

---

[2] Plaintiff has, despite Defendants contrary contention, alleged Defendants' participation in both a commercial venture, Doc. 1, ¶ 56, and a sex-trafficking venture, *id.*, ¶¶ 57–58.

as perpetrators. *See United States v. Bhimani*, Criminal No. 3:17-324, 2021 WL 5179196, at *9 (M.D. Pa. Nov. 8, 2021) (hotel owner-defendants convicted where they "knowingly rented rooms to . . . sex traffickers," allowed guests to check in without identification, and "continued to rent rooms to these guests" while receiving "financial benefit"). This Court has likewise refused dismissal of § 2255 claims based on similar TVPRA allegations from which it can be inferred "that Defendants either (1) harbored and maintained Plaintiffs in violation of § 1591(a)(1), or (2) benefitted financially from participating in a motel venture that did the same in violation of § 1591(a)(2)." *Roseberry v. Studio 6 Delk Rd., LLC*, 815 F. Supp. 3d 1325, 1338 (N.D. Ga. 2025). Plaintiff's allegations here are at least as strong. Thus, even if limited to perpetrators, Plaintiff states a § 2255 claim.

D.   <u>Defendants' other arguments are meritless.</u>

Defendants' remaining arguments that she failed to plead certain facts supporting the predicate violation of § 1591—interstate commerce, knowledge of illegal trafficking, and knowledge of Plaintiff's minority—also fail.

*Interstate commerce.* Plaintiff alleges that Defendants' conduct and ventures in this case "utilized the channels and instrumentalities of, or otherwise affected, interstate or foreign commerce, among others including highways and interstates, vehicles traveling and sold in, goods and services, advertisement, and the internet." Doc. 1, ¶ 60. Defendants' operation of a

13

motel, rental of rooms, and sale of condoms to a transient, traveling public affects interstate commerce even if their clientele is mostly local. *See United States v. Daniels*, 685 F.3d 1237, 1243 n.9 (11th Cir. 2012) ("A hotel/motel is a facility of interstate and foreign commerce because it serves interstate travelers, even if the greater share of its customers are from inside the state."); *see also Heart of Atlanta Motel, Inc. v. U.S.*, 379 U.S. 241, 261 (1964). Moreover, because this issue pertains only to the predicate criminal violation of § 1591, Plaintiff need only plead enough to convict a § 1591 defendant, which she has. *See United State v. Evans*, 476 F3d 1176, 1179 (11th Cir. 2007) (holding interstate commerce element of TVPA met when Defendant used "hotels that served interstate travelers"); *United States v. Obie*, No. 1:18-cr-00424, 2019 WL 6873520, at *5 (N.D. Ga. Dec. 17, 2019) (allegations that defendant "utilized hotels involved in interstate commerce" sufficient for indictment).

*Knowledge of sex trafficking.* Plaintiff has exceeded the general allegations required by FED. R. CIV. P. 9(b), alleging numerous facts showing Defendants' actual knowledge or reckless disregard of Plaintiff's criminal child-sex-trafficking. Doc. 1, ¶¶ 9, 13–31, 84. Even if disputed, those facts cannot be resolved or construed against Plaintiff in a motion to dismiss.

*Knowledge of Plaintiff's minority.* Similarly, Plaintiff has adequately pleaded Defendants' knowledge that she was a minor. Defendants again ignore that Plaintiff need only plead knowledge generally. FED. R. CIV. P. 9(b). She

14

has done that and more. *See* Doc. 1, ¶¶ 11, 14, 17–18, 22, 24); Doc. 25-1, at 14. And in any event, Defendants misstate the law entirely. Section 1591 explicitly does *not* require proof of knowledge that the plaintiff was under 18 years old. Instead, Plaintiff only has to plead that the defendant "had a reasonable opportunity to observe" the minor plaintiff but "need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." 18 U.S.C. § 1591(c). Defendants had the opportunity to and did in fact observe J.H. as a minor being sold for sex. Doc. 1, ¶ 18. Defendants' employees also had abundant opportunity to observe her—servicing her room, selling her condoms, and interacting with her repeatedly while she was perceptibly underage. *E.g.*, Doc. 1, ¶¶ 11, 14, 16–18, 20–24. Her youth was apparent, *id.* ¶¶ 11, 18, 20, and staff knew she was too young even to rent a room in her own name, *id.* ¶ 22. In short, knowledge of age (or lack thereof) is not a defense in sex trafficking cases. Defendants' contrary inferences and new facts—that makeup or the absence of ID show she looked like an adult—are not appropriate grounds for dismissal.

## II.    Plaintiff's pleads public nuisance claim under Georgia law.

### A.    Plaintiff sufficiently alleged a *per se* public nuisance.

Defendants' operation of the Motel 6 constituted a public nuisance. "To establish a nuisance claim, a plaintiff must allege 'the existence of the nuisance complained of, that he or she has suffered injury, and that the injury

complained of was caused by the alleged nuisance.'" *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1311 (N.D. Ga. 2023) (quoting *Bord v. Hillman*, 335 Ga. App. 18, 21 (2015)). "Under Georgia law, a nuisance is defined as 'anything that causes hurt, inconvenience, or damage to another. . . .'" *Id.* (quoting O.C.G.A. § 41-1-1).

> Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. . . . "A public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action."

*Roseberry*, 815 F. Supp. 3d at 1337 (quoting O.C.G.A. § 41-1-3). Under Georgia law, a "lewd house" is a *per se* public nuisance. *Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332, 332 (1916); *Fanning v. State*, 17 Ga. App. 316, 317 (1915); *see also* O.C.GA. § 41-3-1. This is true even where lawful lodging activity occurs alongside the unlawful conduct, and the proprietor lacks actual knowledge of the prostitution (not the case here). For example, in *Fitzgerald v. State*, the hotel operated as a restaurant and lodging house where lawful guests stayed along with those engaged in prostitution. 10 Ga. App. 70, 71 (1911). Even so, the court upheld a conviction for maintaining a lewd house where ***"[o]nly one***

16

***act of sexual intercourse was directly proved, and it was not shown that the defendant personally knew of this act."*** *Id.* (emphasis added).[3]

Plaintiff's allegations are sufficient to state a claim that Defendants' hotel was a *per se* public nuisance. Places like the Motel 6 where prostitution and other crimes proliferate are paradigmatic "lewd house" public nuisances under Georgia law. Plaintiff alleged abundant facts demonstrating that Defendants' motion was such a nuisance, including that

> sex trafficking and prostitution were rampant at the Motel 6 for years—before, during, and after Plaintiff's trafficking. . . because[] Defendants' employees knew of, permitted, or observed signs of sex trafficking and/or prostitution at the Motel 6; . . . knew about several other sex trafficking victims at the Motel 6 before, during, and after Plaintiff was sold for sex there; . . . knew about criminal activity occurring at the Motel 6 that is commonly associated with sex trafficking; . . . knew the motel was a central hub for sex trafficking of minors . . . ; [and] knew about reports of Motel 6 guests regarding sex trafficking and prostitution-related activities[.]

Doc. 1, ¶ 7. Not to mention the hotel's infamous feature in a CNN documentary, in which another 17-year-old child was rescued from sex trafficking *at Defendants' hotel. Id.*, ¶¶ 36–37. "Sex trafficking and prostitution were common occurrences at the Motel 6 [that] Defendant[s] chose to ignore, allow, condone, facilitate, support, or permit[.]" *Id.*, ¶ 9. Consequently, Defendants'

---

[3] Defendants' citationless assertion that a previous declaration as a public nuisance is required suffers from an obvious absurdity: that would make it *impossible* to ever have a first case and, therefore, any other such cases.

"Motel 6 had a well-established reputation for criminal activity, including prostitution and sex trafficking," *id.*, ¶ 33, "as a hub for illegal sex trafficking operations," *id.*, ¶ 38, and as a place "where one or more convicted child predators and abusers operated an illegal sex trafficking ring to sell girls, including minors, for sex," *id.*, ¶ 39. Defendants were aware "of prior and ongoing crime" before and at the time of Plaintiff's trafficking. *Id.*, ¶ 34–35.

By ignoring, condoning, and supporting trafficking-related crimes, "Motely 6 staff created and unsafe environment where dangerous criminal activity was permitted[.]" *Id.*, ¶ 9.b. Defendants "negligently or recklessly turned a blind eye and permitted illegal activities to occur at the motel, including rampant prostitution, sex trafficking, crimes against women, drugs, violence, and other dangerous, illegal activity." *Id.*, ¶ 9.c. Plaintiff was sold for sex, with "10-15 other girls," including minors, *id.*, ¶ 26, at the Motel 6 to "a hundred or more buyers," on a given day, *id.*, ¶ 27. The motel's policies and practices furthered the dangerous criminal activity. *Id.*, ¶¶ 29–31. These nuisance conditions specially damaged Plaintiff. *Id.*, ¶¶ 75, 79–80, 88.

Though her allegations are sufficient, Plaintiff also has evidence substantiating them.[4] At least as far back as 2005 (nearly a decade before

---

[4] Should the Court find Plaintiff's allegations insufficient, it should allow J.H. to amend prior to dismissal, particularly given the volume of evidence substantiating her claims that she would incorporate into any amendment. *See Florence v. Deli Mgmt., Inc.*, No. 1:18-CV-04303-SCJ, 2019 WL 12405933, at *2

18

Plaintiff was sex-trafficked) the property—then branded as a Days Inn—had "lots of prostitutes, pimps, and drugs"; women "dressed like prostitutes" who the owner allowed extra rooms "to use and get ready"; and had "a lot of traffic going in and out of rooms all day and night for sex and drugs." **Ex. A, ¶¶** 4–5, 8. The owner was in a relationship with a cocaine user and prostitute and neither he nor anyone else did anything about the patently rampant criminality. *Id.*, ¶¶ 3, 7. From 2012, another guest who lived at the motel testifies that "illegal drugs and prostitution were rampant," that he "was often solicited to buy either sex or drugs" there, and that the hotel knew about it but ignored it at best. **Ex. B**, ¶¶ 2–5. A Motel 6 employee who worked there between 2012 and 2013 similarly testified that it "was obvious prostitution was happening" there. **Ex. C**, ¶ 3. The signs were obvious—women wearing "revealing clothing" and picking up dates, men "rent[ing] multiple rooms . . . for a short period of time" where the male buyers were constantly "coming and going"; but instead of doing something about it, hotel management were "entertained by it or ignored it" and "joked about women being 'hos' and 'prostitutes.'" *Id.*, ¶¶ 3–5, 7. Some employees even profited from "flip[ping] rooms"—*i.e.* selling rooms for cash for short periods of time. *Id.*, ¶ 5. The hotel

---

(N.D. Ga. Oct. 7, 2019) ("[A] district court should generally afford a plaintiff at least one opportunity to amend a complaint in order to correct deficiencies." (citing *Langlois v. Traveler's Ins. Co.*, 401 F. App'x 425, 426 (11th Cir. 2010)).

had no training or policies to identify trafficking; instead, they simply enforced a policy of not calling law enforcement. *Id.*, ¶ 7. Another guest who lived there for a couple of years around 2013 described the Motel 6 as "a bad place full of prostitutes, pimps, and drugs." **Ex. D**, ¶ 3. She observed prostitution, including girls, younger and older, picking up dates nearby and "a lot of foot traffic going in and out of the rooms all day and night for sex and drugs" and used condoms all over the property. *Id.*, ¶¶ 6–8. She testifies that "[s]ome of the staff at the hotel were involved in selling sex and drugs." *Id.*, ¶ 9. Once again, the "hotel and its management knew about it but didn't really do anything to stop it." *Id.*

Such allegations (and evidence) establish that the Motel 6 was a *per se* public nuisance under Georgia law. While Georgia courts reject nuisance claims based on a "single isolated occurrence," a nuisance is established by allegations of "a continuous or regularly repetitious act or condition which causes the hurt, inconvenience or injury." *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 769 (2003) (quoting *Ingram v. Baldwin Cnty.*, 149 Ga. App. 422, 423 (1979)). Plaintiff has alleged such continuous and repetitious illegal sex trafficking and other crime at Defendants' Motel 6 before, during, and after J.H.'s trafficking there. Doc. 1, ¶¶ 26, 35, 72, 80. Once again, courts in this district routinely find similar sex-trafficking-related allegations sufficient to state a claim for *per se* public nuisance. *See Roseberry*, 815 F. Supp. 3d at 1335-37; *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327,

20

1346 (N.D. Ga. 2024); *E.M. v. Tucker Inn Inc.*, No. 1:22-cv-02559-WMR, 2024 WL 4005218, at *6 (N.D. Ga. July 15, 2024). Similarly, Plaintiff states a claim for *per se* public nuisance.

B.    Defendants' arguments misconstrue both law and fact.

*Plaintiff adequately alleged that Defendants' Motel 6 harmed all who encountered it.* To begin, Defendants miscomprehend Georgia's nuisance statute. The phrase from § 41-1-3, "in which the public does not participate" concerns whether a plaintiff has an individual right of action—*i.e.*, whether she suffered "special damage outside of that which also annoys and hurts the public" and therefore has a right to sue. *Ison v. Manley*, 76 Ga. 804, 807 (1886); *accord Ga. Chem. Co. v. Colquitt*, 72 Ga. 172 (1884). Section 41-1-3 does not, as Defendants wrongly assume, define whether the Motel 6 was a nuisance; that is instead governed by, among others, O.C.G.A. § 41-1-1 and common law.

Also contrary to Defendants' argument, the fact that hundreds of buyers of sex were involved only furthers Plaintiff's claims that the Motel 6 is a nuisance *per se* causing rampant sex trafficking and other persistent crime for years. *See Brindle*, 145 Ga. at 398. Defendants also rely on improper misconstructions of Plaintiff's allegations in their own, rather than Plaintiff's, favor. Plaintiff plainly alleges that Defendants' nuisance—*i.e.*, the "sphere of operation of the crime, sex trafficking, and prostitution at the Motel 6"—"negatively damaged all persons who came within" that sphere. Doc. 1, ¶¶ 73.

21

More than a dozen women, including minors, were also harmed by it. *Id.*, ¶¶ 26. Plaintiff alleges these injuries harmed the public more generally, *i.e.*, the Motel 6's "history of rampant crime and illegal sex activity [that] created a spillover effect that led to other crime occurring in the surrounding area," a "blighting effect on the surrounding community," and a "tende[ncy] to breed crime and debauch the morals of the community." *Id.*, ¶¶ 72–74. It was "a hub for illegal sex trafficking," *id.*, ¶ 38, where "convicted child predators and abusers operated an illegal sex trafficking ring to sell girls, including minors, for sex at the motel," *id.*, ¶ 39. Particularly as a *per se* public nuisance, it is at least reasonable to infer from these allegations that anyone in the area was harmed by the blight of criminality emanating from the Motel 6 during its operation and even years after it was torn down.

Defendant's contention that *some* Motel 6 patrons were unharmed by the rampant criminality is at odds with Plaintiff's allegations and thus not properly considered. *See FindWhat Inv'r Grp.*, 658 F.3d at 1296. But even if this extra fact were true, Defendants' motel would still be a nuisance even though lawful guests stayed there. *See Fitzgerald*, 10 Ga. App. at 71. And Defendants' lone citation, *White v. Georgia Power Co.*, 265 Ga. App. 664 (2004), does not save its motion. *White* did not involve a *per se* public nuisance claim based on sex-trafficking and rampant, repeated criminal activity. *White* was a summary-judgment decision arising from a drowning at a power-company dam

with no prior history of injurious condition. In contrast, Georgia courts and federal courts within this district have repeatedly found nuisance claims sufficiently pleaded on similar facts of rampant sex and attendant crimes at a motel.[5] From the facts alleged and reasonable inferences about its injurious effects on all persons who encountered the sex trafficking at Defendants' motel, regardless of what else they may be doing or why they were there, Plaintiff has pleaded a sufficiently harmful nuisance.

*Plaintiff adequately pleads Defendants' control of the nuisance.* Under Georgia law, anyone who "shall knowingly . . . maintain, use, own, or lease any building, structure, or place for the purposes of sexually related charges shall be guilty of maintaining a nuisance." O.C.G.A. § 41-3-1. Defendants argue that they did not "control" the harm caused by Plaintiff's traffickers, but Plaintiff need not allege ownership of the harmful conduct—only that Defendants were ". . . either the cause or a concurrent cause of the creation, continuance, or

---

[5] *E.g.*, *T.S.*, **Ex. E**; *B.W. v. G6 Hospitality Prop. LLC*, NO. 1:24-CV-00195-JPB, 2025 WL 3557926, at \*7–8 (N.D. Ga. Feb 11, 2025); *Roseberry*, 815 F. Supp. 3d at 1335-37; *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1345–46 (N.D. Ga. 2024); *E.M.*, 2024 WL 4005218, at \*5–8; *D.H.*, 689 F. Supp. 3d at 1311; *Jane Doe v. Suresh & Durga, Inc.*, 20A837955 (State Ct. Dekalb Cnty., May 8, 2024); *Martin v. State*, 62 Ga. App. 902, 904–05 (1940); *Brindle*, 145 Ga. at 398; *Fanning v. State*, 17 Ga. App. 316, 317 (1915); *see also, e.g.*, *Birdwell v. State*, 112 Ga. App. 836, 837 (1965) (lewd house); *Frazier v. State*, 93 Ga. App. 204, 206–07 (1956) (same); *Fitzgerald*, 10 Ga. App. at 71-72 (same); *Kessler v. State*, 119 Ga. 301, 303 (1904) (same); *Clifton v. State*, 53 Ga. 241, 244 (1874) (same).

maintenance of the nuisance.'" *Roseberry*, 815 F. Supp. 3d at 1336 (quoting *Sumitomo Corp. of Am. v. Deal*, 256 Ga. App. 703, 707 (2002)). Plaintiff adequately alleges that Defendants not only "owned and operated the Motel 6," which was a *per se* public nuisance, Doc. 1, ¶ 34, but also that Defendants' own acts or omissions caused the injurious nuisance by allowing the Motel 6 to become a den of criminality and sex trafficking that resulted in Plaintiff's injuries. Plaintiff has also pleaded that Defendants through their ownership and control over the Motel 6, Doc. 1, ¶¶ 11–41, 53-86, and through the conduct of their employees (for which they are vicariously liable, *see* Doc. 1, ¶ 10), *e.g.*, Doc. 1, ¶¶ 9.b, 13–15, 17–18, 20–22, 31, developed and sustained the criminally nuisance conditions that injured Plaintiff. *See Munn v. Mayor & Alderman of City of Savannah*, 906 F. Supp. 1577, 1585 (S.D. Ga. 1995) (denying summary judgment and allowing nuisance claim based on "repetitive" nuisance conditions caused by failure to rectify conditions occasioned by employee's misconduct). This is enough to demonstrate Defendants' control.

Defendants' own authority, *Fielder v. Rice Constr. Co.*, 239 Ga. App. 362, 522 S.E.2d 13 (1999), undermines their position. The *Fielder* court denied summary judgment because there was a dispute of fact about control over the alleged nuisance. Likewise, Plaintiff alleges that Defendants controlled and failed to remedy a known, sustained criminal nuisance. Even if Defendants dispute those allegations, this cannot be resolved against Plaintiff here.

24

C.    <u>The statute of limitations does not bar Plaintiff's claims.</u>

Finally, Plaintiff's nuisance claim is timely. So far, the courts in this district appear to uniformly agree. Chief Judge May concisely and correctly rejected Defendants' argument, holding that "Georgia courts have repeatedly stated that a public nuisance claim is not subject to a statute of limitations. Under Georgia law, a public nuisance claim is not subject to Georgia's two-year personal injury statute of limitations as Defendants contend." *Roseberry*, 815 F. Supp. 3d at 1337 (citing Georgia caselaw); *see also T.S. v. Gateway, Inc.*, No. 1:25-cv-5444-MHC, at 15 n.3 (N.D. Ga. Apr. 14, 2026) (Doc. 21) (attached as **Exhibit E**). In fact, Judge May cites Defendants' cited authority, *Davis v. City of Forsyth*, 275 Ga. App. 747, 750 (2005), which only affirms the point. Defendants cite no authority that the demolition of the Motel 6 extinguishes an otherwise statute-of-limitation-less claim. To the contrary, Defendants acknowledge no statute of limitation applies. Doc. 25-1, at 9. And whether Defendants' nuisance continues is a factual question that cannot be resolved against Plaintiff because she alleges that the nuisance "continue[s] to harm the public to this day." Doc. 1, ¶ 74.

## CONCLUSION

Defendants' motion should be denied. Alternatively, should the Court grant Defendants' motion in whole or in part, the Court should allow Plaintiff to amend her complaint before dismissing her claims.

25

Respectfully submitted this 21st day of July, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Stephen Morrison*
STEPHEN D. MORRISON, III
Georgia Bar No. 700828
smorrison@atclawfirm.com
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile
Attorneys for Plaintiff

26

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Century Schoolbook, 13-point font.

This 21st day of July, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Stephen Morrison*
STEPHEN D. MORRISON, III
Georgia Bar No. 700828
smorrison@atclawfirm.com
Attorney for Plaintiff

27