**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| J.H.,<br><br>Plaintiff,<br><br>v.<br><br>CT HOTELS, LLC, *and* DIPLOMAT CT HOTELS, LLC,<br><br>Defendants. | No. 1:26-cv-01430-VMC |

**PLAINTIFF'S CONDITIONAL MOTION FOR LEAVE TO AMEND COMPLAINT**

On March 16, 2026, Plaintiff sued Defendants because she was sold for sex as a child at their Motel 6, formerly located at 3585 Chamblee Tucker Road, Atlanta, Georgia. *See generally* Doc. 1. Plaintiff alleges that individually and together Defendants owned, operated, controlled, or managed the Motel 6. *E.g.*, Doc. 1, ¶¶ 9, 10, 34. Plaintiff attempted to serve Defendants for months before successfully doing so. Doc. 22. Then, after Plaintiff consented to extend the time to respond to the complaint, Defendants answered and filed a partial motion to dismiss Plaintiff's claims under 18 U.S.C. § 2255 ("Masha's law") and Georgia common law nuisance. Docs. 23–25. Plaintiff opposed Defendants' motion. Doc. 33. In doing so, she attached multiple witness declarations obtained since filing suit. Docs. 33-1–33-4. Plaintiff now moves for leave to

amend her complaint should the Court grant Defendants' motion to dismiss, in whole or in part.

The Court should grant Plaintiff leave to amend. Plaintiff needs the Court's permission because more than twenty-one days have elapsed since Defendants answered and moved to dismiss. "[Rule] 15(a)(2) allows [amendment] only with the opposing party's written consent or the court's leave. However, Rule 15(a)(2) also provides that the court should freely give leave when justice so requires." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (citation modified). "Generally, 'where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisse[s] the action with prejudice.'" *Doe (K.B.) v. Hare Krishna Savannah Hotel, LLC*, 346 F.R.D. 150, 154 (N.D. Ga. Mar. 25, 2014) (quoting *Garcia*, 48 F.4th at 1220)). The Court may allow a party to amend even after granting a motion to dismiss on claims the party seeks to replead. *See id.* at 158–61.

Plaintiff moves for leave to amend because such requests ordinarily are made by separate motion and not only in a responsive pleading.[1] *See U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006). But Plaintiff's

---

[1] Plaintiff requested leave to amend in her opposition. *See* Doc. 33 at 18–19 n.4, 25.

motion is "conditional" on the outcome of Defendants' motion to dismiss. If the Court denies Defendants' motion, then Plaintiff's motion can be denied as moot.

Plaintiff should be allowed to amend because since filing suit and responding to Defendants' motion, she has obtained evidence corroborating her claims against Defendants. Though the complaint sufficiently alleges Masha's Law and Georgia nuisance claims, based on this new evidence, Plaintiff can enhance and expand on her factual allegations showing Defendants' liability. *See Doe (K.B.)*, 346 F.R.D. at 154 (explaining that amendment should be allowed where amended complaint might state a claim). Plaintiff's additional liability allegations come from two categories of new evidence.

*Witness declarations*. After filing suit, Plaintiff obtained several witness declarations that support her claims and were attached to Plaintiff's opposition brief. *See* Docs. 33-1–33-5.[2] If granted leave, Plaintiff will add specific factual allegations based on the testimony of these and other anticipated witnesses.

*District attorney's file.* Plaintiff's trafficker who sold her for sex as a child at Defendants' Motel 6 was prosecuted by DeKalb County. Before suing,

---

[2] Today, Plaintiff filed a notice of correction about one of these declarations. Specifically, Plaintiff mistakenly represented that Exhibit B pertained to Defendants' Motel 6 but, in fact, it related to a nearby Motel 6. That correction does not substantively change Plaintiff's opposition.

Plaintiff tried for months to get that DA file but got nowhere. Once discovery opened, Plaintiff served a subpoena on the DeKalb County District Attorney for the documents (at the DA's insistence). Doc. 18. Even then, the DA file was not immediately forthcoming. For months, Plaintiff negotiated with the DeKalb DA regarding the requested file. Finally, a week after this Court entered a robust Consent Confidentiality Order, Doc. 34, Plaintiff at long last received some requested documents on July 31—more than four months after she filed her complaint and more than a week after filing her opposition to Defendants' motion. If granted leave, Plaintiff will add allegations based on the DA file, too.

When seeking leave to amend, a party must "either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (quoting *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999)). Here, if granted leave to amend Plaintiff would incorporate the allegations of her operative complaint (Doc. 1)[3] and add the substance of these further allegations.

---

[3] The Local Rules mandate that parties be permitted to "incorporate relevant provisions of prior pleadings by reference" when amending a pleading. LR 15.1, NDGa. Plaintiff does so in her proposed amendment, attached as **Exhibit 1**.

**Nuisance harms.** Plaintiff's factual allegations about the Motel 6's persistent and ongoing sex and drug crime are sufficient to state a claim that Defendants controlled and maintained a public nuisance at the Motel 6. *See* Doc. 1, ¶¶ 7–41, 53–86. Should the Court disagree, Plaintiff will amend her complaint to add essentially these allegations about Defendants' nuisance liability, namely, that the motel nuisance harmed all who encountered it (and "specially" damaged Plaintiff):

- The area around the Motel 6 experienced significant blighting as a direct result of Defendants' maintenance of a criminal and dangerous nuisance. The values of properties in proximity to Defendants' Motel 6 were significantly depressed because of the rampant and unchecked prostitution, sex trafficking, violent crime, drug use, and other illicit and dangerous activity at the Motel 6. These blighting conditions also harmed every member of the public who encountered the motel, including guests and others—regardless of whether they were engaged in some or all the nuisance activity, victims of the nuisance activity, innocent bystanders, neighbors, or passers-by who encountered the Motel 6 willingly or unwillingly. All of these persons were harmed by mere proximity to Defendants' Motel 6 or when traveling or being upon the surrounding ways and thoroughfares. The nuisance activity at Defendants' Motel 6 also injured nearby business

owners and patrons who were forced to confront the increased risk of criminal victimhood and the pervading refuse, odors, and other unseemly and unsightly environment of a motel that allowed rampant loitering, drugs, and sex crimes on its property.

- Defendants' Motel 6 was plagued by the constant presence of illegal, illicit, and dangerous activity. Prostitutes and sex-trafficking victims, including Plaintiff and other minors, were violently and repeatedly sold for sex at the motel. Similarly, the motel was plagued by constant use of drugs and drug-related transactions. Any person who encountered the Motel 6 was immediately harmed by the noxious and intoxicating fumes of drugs, discarded paraphernalia, and other refuse, bodily fluids and excrement, as well as individuals loitering and causing disruptions due to drug-altered mental and physical states. These are only examples of the offending effects emanating from Defendants' nuisance motel.
- Defendants' Motel 6 was a constant source of violent and sexual crime. This caused and attracted loitering by the buyers, users, sellers, victims, and vagrants that participated in such illicit conduct as well as the general degradation of the character of the property and morals of the surrounding community. These deleterious effects were compounded by and contributed to Defendants' failure adequately to

maintain the motel, its surrounds, and the adjacent public ways in a sanitary and sound condition. Visibly, the motel was poorly maintained with dirt, grime, filth, discarded trash (including used condoms), broken fixtures, overflowing rubbish bins, rot, and mold—to name some of the many ways the motel was rundown and broken.

- These and other pernicious byproducts of constant illegal drug use and prostitution, among other illicit conduct, pervaded the Motel 6's operation. The Motel 6 was infected by the constant presence and buildup of trash—discarded food and food canisters and wrappers; used and broken drug paraphernalia; drug, alcohol, and tobacco remnants and discarded vessels, containers, bottles; butts, etc.; and used condoms—on the motel property, its grounds, and surrounding public ways, including parking lots and nearby streets. The motel failed to police and clean up this trash from its own operations and those who the motel allowed to inhabit and occupy its premises so long as Defendants continued to receive money from the activities giving rise to the nuisance conditions. Through weather events and vehicle traffic, the filth from the motel would migrate into the surrounding public ways, properties, and even residential areas. The refuse and filth from the constant stream of illegal activity was a visible blight on the property and created persistent and noxious

odors in addition to a significant eyesore to all who encountered it. Any member of the public who encountered the motel or, really, came anywhere near it, was harmed by the unkempt and hazardous waste and criminal and illicit activity that pervaded and emanated from the motel.

- Upon information and belief, these and related nuisance conditions resulted in violations of public health regulations to the point that the only option was to demolish the motel.
- The testimony of multiple witnesses demonstrates Defendants' maintenance of a drug- and crime-infested motel for nearly a decade or more. *See* ECF 33-1 (testifying about "lots of prostitutes, pimps, and drugs" at the Motel 6 from 2005 to 2006, "people buying and using drugs on the property out in the open," "more than a dozen used condoms near the property," "a lot of traffic going in and out of the rooms all day and night for sex and drugs," and someone who "slit [her] tires . . . because [she] would not let her smoke crack in [her] hotel room"); ECF 33-3 (testifying former employee who around 2012 saw "lots of prostitutes, pimps, and drugs at the Motel 6," that the owners "knew there were safety and security problems at the hotel," and that the hotel discouraged contact with law enforcement); ECF 33-4 (testifying former guest from around 2013 to 2015 who described

the Motel 6 as "a bad place full of prostitutes, pimps, and drugs" where "girls and pimps exchange money and drugs" and "random people" and "a lot of foot traffic" were "going in and out of the rooms all day and night for sex and drugs"; the hotel also "had a reputation with the staff for being littered with used condoms" which she saw "all over the property").[4]

- Motel 6 guests and others who came into proximity of the Motel 6 suffered tangible and intangible harms from Defendants' crime-ridden, poorly maintained, derelict property. This includes not just ordinary guests at the motel and innocent passers-by, but also the buyers and sellers of drugs and sex, prostitutes, pimps, traffickers, and motel employees. The general dirt and grime were unpleasant and offensive to everyone who entered, no matter their business. In addition, the risks of harm and injury, including from sex crimes, drug crimes, and violent crimes, were equally harmful to all in proximity

[4] Again, despite the mistaken reliance upon a declaration from a witness concerning another nearby Motel 6 property in Plaintiff's opposition (Exhibit B, Doc. 33-2), Plaintiff believes that if called that witness would testify about illegal activity at Defendants' Motel 6 similar to that which he testified about regarding the other, nearby Motel 6, including being solicited for sex at Defendants' motel.

to the Motel 6, no matter their business for being on or near to the property.

- Plaintiff suffered these general harms along with all who encountered the Motel 6, in addition to special damages resulting from her being sold for sex as a child at the Motel 6 because of Defendants' maintenance of a nuisance motel. (*See also* Doc. 1, ¶¶ 53–89.)
- The harms from Defendants' nuisance motel continue well after the physical demolition of the motel and continue to blight and depress the area surrounding the motel to this day. This includes a general aversion by the public to this area, a depression of property values, and a persisting reputation for illicit and dangerous activity. Most significantly, the horrors inflicted by the crime and other injuriously nuisance conduct at Defendants' motel upon the victims, like Plaintiff who was harbored and falsely imprisoned there, have not gone away––and probably never will.

**Interstate Commerce**

- Defendants opened their motel to and operated it such that individuals traveled and lodged at the motel by means of traveling between the state of Georgia and other states and/or foreign countries. The nature of Defendants' operation of a motel and provision of products and services provided in attendance therewith,

generally, as well as all those individuals involved in the ventures in which Defendants participated (including Plaintiff's illegal sex trafficking), specifically, had a substantial effect or were conducted in interstate commerce.

- Upon information and belief, one or more of the buyers of sex who purchased Plaintiff traveled across state lines to Defendants' Motel 6, including one or more individuals who had sex with Plaintiff while she was a victim of sex trafficking harbored at Defendants' motel. And many of Defendants' clientele and their guests were transient motorists and travelers who were residents of other states beside Georgia (or, foreign countries and territories) or crossed interstate lines to lodge or do business (illicit or otherwise) at Defendants' Motel 6.
- Defendants advertised the motel services used and coordinated the reservation of rooms through the use of the instrumentalities of interstate commerce, including through internet-based advertising and applications. Similarly, internet-based services were used by Plaintiff's traffickers, those who purchased sex with her from her traffickers, and the motel to advertise plaintiff for sex, to coordinate the reservation of rooms that harbored Plaintiff, or otherwise to

conduct the operation of the TVPRA-violating venture in which Defendants participated.

- In further support, at least two witnesses who observed the rampant illicit drug and sex crimes that Defendants allowed at their motel, including prostitution and sex trafficking, exemplify the interstate nature of the operation of Defendants' motel because both witnesses are nonresidents of Georgia. *See* Docs. 33-1 (Declaration of Theresa Caballero); 33-4 (Declaration of Qua'shana Porter).

**Defendants' knowledge of Plaintiff's minority.** Plaintiff sufficiently alleged facts from which the Court can plausibly determine that Defendants knew or should have known she was a child being sold for sex at the Motel 6. *E.g.*, Doc. 1, ¶¶ 9, 11, 14–15, 18, 19–20, 21, 22, 24, 26, 57, 61–62, 82, 84; *see also* Doc. 33, at 14–15 (explaining that such knowledge can be pleaded generally and that under § 1591 such knowledge is not even required). Nevertheless, Plaintiff can provide more allegations about Defendants' knowledge of her age, if the Court determines her allegations are insufficient.

- Plaintiff looked no older than 15 to 17 years old while being sold for sex at the Motel 6. This was plain (or should have been) to anyone who saw her. Her youthful appearance, her incomplete physical and emotional development, and her demeanor were each and together dead giveaways that she was a child. Moreover, other similarly young-

looking girls in the company of much older, and obviously controlling, men were also present at the Motel 6. This only raised further suspicion about the probability that Plaintiff and other girls were being sold for sex as children. In fact, the youthfulness of Plaintiff and other children at the motel was likely what—disturbingly—drew some, if not the vast majority, of the older men who bought them for sex at Defendants' Motel 6. Plaintiff's perceptibly youthful physical characteristics and bearing were something that would lead any reasonable person to conclude she was under 18 years old.

**The recently obtained DA file relating to the trafficking of Plaintiff and other minor victims further supports her claims.** The documents and information obtained from the DeKalb County DA corroborate that Plaintiff was a victim of sex trafficking at the Motel 6. The specifics of those documents and information are currently subject to the strictures of the Court's confidentiality order (Doc. 34). To avoid unnecessary and probably premature filings under seal, Plaintiff requests that the Court permit Plaintiff 14 days after any ruling on Defendants' motion to dismiss so that she may file under seal (or as otherwise allowed under governing orders and after conferral with the DeKalb DA) specific additional factual allegations supporting her claims that she has plausibly stated a claim under Masha's law because she is a child victim of an enumerated crime, namely sex trafficking under 18 U.S.C

§ 1591. That said, as an officer of the Court, this counsel proffers that the information and allegations derived from the confidential DA file further support Plaintiff's claims.

***

Plaintiff will include the foregoing and any other necessary amending allegations in an amended complaint, as ordered by the Court. On that topic, Plaintiff observes that the Court disfavors partial motions to dismiss and requires the inclusion "as an ECF attachment the proposed amended pleading" with any motion to amend a pleading. Hon. Victoria M. Calvert, *Standing Order: Guidelines to Parties and Counsel in Cases Proceeding Before the Honorable Victoria M. Calvert* (last updated May 30, 2025), https://www.gand.uscourts.gov/sites/gand/files/VMC_CV_Order.pdf. To comply, Plaintiff files with her motion a proposed amended complaint as **Exhibit 1**.

However, Plaintiff requests that the Court *not* order that this proposed amendment become the operative amended complaint. Instead, Plaintiff requests that the Court, for good cause, deviate from standard practice given the conditional nature of this motion, the likelihood that the Court's ruling on Defendants' motion will inform what, if any, additional allegations are necessary, and the need possibly to file some portion of the complaint under seal to incorporate allegations from the confidential DA file. In sum, if the

Court grants leave to amend, Plaintiff requests 14 days to file a final version of the amended complaint based on these any other relevant considerations.

## CONCLUSION

For the foregoing reasons, Plaintiff's conditional motion should be ruled on as follows. If the Court grants Defendants' pending motion to dismiss (Doc. 25) in whole or part, the Court should grant Plaintiff leave to file an amended complaint within 14 days of such order so that Plaintiff can include confidential allegations and review the Court's ruling on Defendants' motion before finalizing her amendment to include as appropriate, *inter alia*, allegations set forth herein and in the proposed amendment at **Exhibit 1**. But if the Court denies Defendants' motion, Plaintiff's conditional motion can be denied as moot.

This 26th day of August, 2026.

Respectfully submitted,

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Stephen Morrison*

STEPHEN D. MORRISON, III
Georgia Bar No. 700828
smorrison@atclawfirm.com
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

***Attorneys for Plaintiff***

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Century Schoolbook, 13-point font.

This 26th day of August, 2026

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Stephen Morrison*

STEPHEN D. MORRISON, III
Georgia Bar No. 700828
smorrison@atclawfirm.com

***Attorney for Plaintiff***

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| J.H.,<br><br>Plaintiff,<br><br>v.<br><br>CT HOTELS, LLC, *and* DIPLOMAT CT HOTELS, LLC,<br><br>Defendants. | No. 1:26-cv-01430-VMC |

**[Proposed] <u>AMENDED COMPLAINT</u>**

1.

J.H. is a victim of sex trafficking at the Motel 6 formerly located at 3585 Chamblee Tucker Road, Atlanta, Georgia ("Motel 6"). In 2015, J.H. was sold for sex at the motel beginning when she was a child of only 14 years old. Pursuant to the Protective Order in this case (Doc. 8), Plaintiff is identified in this Complaint by her initials. Plaintiff's counsel has disclosed Plaintiff's full name to defense counsel pursuant to the Court's protective order.

2.

Pursuant to LR 15.1, NDGa, Plaintiff incorporates as if fully set forth herein verbatim the allegations in her Complaint (Doc. 1) against Defendants in the above-captioned matter, including without limitation Paragraphs 2–90, and further alleges the following.

## Public Nuisance

3.

The area around the Motel 6 experienced significant blighting as a direct result of Defendants' maintenance of a criminal and dangerous nuisance. The values of properties in proximity to Defendants' Motel 6 were significantly depressed because of the rampant and unchecked prostitution, sex trafficking, violent crime, drug use, and other illicit and dangerous activity at the Motel 6. These blighting conditions also harmed every member of the public who encountered the motel, including guests and others—regardless of whether they were engaged in some or all the nuisance activity, victims of the nuisance activity, innocent bystanders, neighbors, or passers-by who encountered the Motel 6 willingly or unwillingly. All of these persons were harmed by mere proximity to Defendants' Motel 6 or when traveling or being upon the surrounding ways and thoroughfares. The nuisance activity at Defendants' Motel 6 also injured nearby business owners and patrons who were forced to confront the increased risk of criminal victimhood and the pervading refuse, odors, and other unseemly and unsightly environment of a motel that allowed rampant loitering, drugs, and sex crimes on its property.

4.

Defendants' Motel 6 was plagued by the constant presence of illegal, illicit, and dangerous activity. Prostitutes and sex-trafficking victims,

including Plaintiff and other minors, were violently and repeatedly sold for sex at the motel. Similarly, the motel was plagued by constant use of drugs and drug-related transactions. Any person who encountered the Motel 6 was immediately harmed by the noxious and intoxicating fumes of drugs, discarded paraphernalia, and other refuse, bodily fluids and excrement, as well as individuals loitering and causing disruptions due to drug-altered mental and physical states. These are only examples of the offending effects emanating from Defendants' nuisance motel.

5.

Defendants' Motel 6 was a constant source of violent and sexual crime. This caused and attracted loitering by the buyers, users, sellers, victims, and vagrants that participated in such illicit conduct as well as the general degradation of the character of the property and morals of the surrounding community. These deleterious effects were compounded by and contributed to Defendants' failure adequately to maintain the motel, its surrounds, and the adjacent public ways in a sanitary and sound condition. Visibly, the motel was poorly maintained with dirt, grime, filth, discarded trash (including used condoms), broken fixtures, overflowing rubbish bins, rot, and mold—to name some of the many ways the motel was rundown and broken.

6.

These and other pernicious byproducts of constant illegal drug use and prostitution, among other illicit conduct, pervaded the Motel 6's operation. The Motel 6 was infected by the constant presence and buildup of trash—discarded food and food canisters and wrappers; used and broken drug paraphernalia; drug, alcohol, and tobacco remnants and discarded vessels, containers, bottles; butts, etc.; and used condoms—on the motel property, its grounds, and surrounding public ways, including parking lots and nearby streets. The motel failed to police and clean up this trash from its own operations and those who the motel allowed to inhabit and occupy its premises so long as Defendants continued to receive money from the activities giving rise to the nuisance conditions. Through weather events and vehicle traffic, the filth from the motel would migrate into the surrounding public ways, properties, and even residential areas. The refuse and filth from the constant stream of illegal activity was a visible blight on the property and created persistent and noxious odors in addition to a significant eyesore to all who encountered it. Any member of the public who encountered the motel or, really, came anywhere near it, was harmed by the unkempt and hazardous waste and criminal and illicit activity that pervaded and emanated from the motel.

7.

Upon information and belief, these and related nuisance conditions resulted in violations of public health regulations to the point that the only option was to demolish the motel.

8.

The testimony of multiple witnesses demonstrates Defendants' maintenance of a drug- and crime-infested motel for nearly a decade or more. The declarations of said witnesses are attached hereto as **Exhibits A–C** to this Complaint and incorporated as if fully set forth herein verbatim. *See* **Exhibit A** (declaration of former guest, testifying to "lots of prostitutes, pimps, and drugs" at the Motel 6 from 2005 to 2006, "people buying and using drugs on the property out in the open," "more than a dozen used condoms near the property," "a lot of traffic going in and out of the rooms all day and night for sex and drugs," and someone who "slit [her] tires . . . because [she] would not let her smoke crack in [her] hotel room"); **Exhibit B** (declaration of former employee who around 2012 saw "lots of prostitutes, pimps, and drugs at the Motel 6," that the owners "knew there were safety and security problems at the hotel," and that the hotel discouraged contact with law enforcement); **Exhibit C** (testifying former guest from around 2013 to 2015 who described the Motel 6 as "a bad place full of prostitutes, pimps, and drugs" where "girls and pimps exchange money and drugs" and "random people" and "a lot of foot

traffic" were "going in and out of the rooms all day and night for sex and drugs"; the hotel also "had a reputation with the staff for being littered with used condoms" which she saw "all over the property").

9.

Motel 6 guests and others who came into proximity of the Motel 6 suffered tangible and intangible harms from Defendants' crime-ridden, poorly maintained, derelict property. This includes not just ordinary guests at the motel and innocent passers-by, but also the buyers and sellers of drugs and sex, prostitutes, pimps, traffickers, and motel employees. The general dirt and grime were unpleasant and offensive to everyone who entered, no matter their business. In addition, the risks of harm and injury, including from sex crimes, drug crimes, and violent crimes, were equally harmful to all in proximity to the Motel 6, no matter their business for being on or near to the property.

10.

Plaintiff suffered these general harms along with all who encountered the Motel 6, in addition to special damages resulting from her being sold for sex as a child at the Motel 6 because of Defendants' maintenance of a nuisance motel.

11.

The harms from Defendants' nuisance motel continue well after the physical demolition of the motel and continue to blight and depress the area

surrounding the motel to this day. This includes a general aversion by the public to this area, a depression of property values, and a persisting reputation for illicit and dangerous activity. Most significantly, the horrors inflicted by the crime and other injuriously nuisance conduct at Defendants' motel upon the victims, like Plaintiff who was harbored and falsely imprisoned there, have not gone away—and probably never will.

**Interstate Commerce**

12.

Defendants opened their motel to and operated it such that individuals traveled and lodged at the motel by means of traveling between the state of Georgia and other states and/or foreign countries. The nature of Defendants' operation of a motel and provision of products and services provided in attendance therewith, generally, as well as all those individuals involved in the ventures in which Defendants participated (including Plaintiff's illegal sex trafficking), specifically, had a substantial effect or were conducted in interstate commerce.

13.

Upon information and belief, one or more of the buyers of sex who purchased Plaintiff traveled across state lines to Defendants' Motel 6, including one or more individuals who had sex with Plaintiff while she was a victim of sex trafficking harbored at Defendants' motel. And many of

Defendants' clientele and their guests were transient motorists and travelers who were residents of other states beside Georgia (or, foreign countries and territories) or crossed interstate lines to lodge or do business (illicit or otherwise) at Defendants' Motel 6.

14.

Defendants advertised the motel services used and coordinated the reservation of rooms through the use of the instrumentalities of interstate commerce, including through internet-based advertising and applications. Similarly, internet-based services were used by Plaintiff's traffickers, those who purchased sex with her from her traffickers, and the motel to advertise plaintiff for sex, to coordinate the reservation of rooms that harbored Plaintiff, or otherwise to conduct the operation of the TVPRA-violating venture in which Defendants participated.

15.

In further support, at least two witnesses who observed the rampant illicit drug and sex crimes that Defendants allowed at their motel, including prostitution and sex trafficking, exemplify the interstate nature of the operation of Defendants' motel because both witnesses are nonresidents of Georgia. *See* **Exs. A**, **C**.

**Knowledge of Plaintiff's minority**

16.

Plaintiff looked no older than 15 to 17 years old while being sold for sex at the Motel 6. This was plain (or should have been) to anyone who saw her. Her youthful appearance, her incomplete physical and emotional development, and her demeanor were each and together dead giveaways that she was a child. Moreover, other similarly young-looking girls in the company of much older, and obviously controlling, men were also present at the Motel 6. This only raised further suspicion about the probability that Plaintiff and other girls were being sold for sex as children. In fact, the youthfulness of Plaintiff and other children at the motel was likely what—disturbingly—drew some, if not the vast majority, of the older men who bought them for sex at Defendants' Motel 6. Plaintiff's perceptibly youthful physical characteristics and bearing were something that would lead any reasonable person to conclude she was under 18 years old.

17.

The district attorney file, which is confidential pursuant to the Court's Confidentiality Order (Doc. 34), contains additional information substantiating that Defendants' maintained the Motel 6 as a nuisance and nuisance *per se* and that Defendants' violated Masha's law because she is a

child victim of an enumerated crime, namely sex trafficking under 18 U.S.C § 1591, and suffered personal injury as a result.

***

**WHEREFORE**, Plaintiff prays for a judgment to be awarded to her and against Defendants for the following:

a. Process issue as provided by law;

b. Plaintiff be awarded actual damages in amounts to be shown at trial from Defendants jointly and severally or as otherwise allowed by law;

c. Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants jointly and severally or as otherwise allowed by law;

d. Plaintiff be awarded a trial by jury; and

e. Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

**TRIAL BY JURY IS HEREBY DEMANDED**.

This 26th day of August, 2026.

Respectfully submitted,

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Stephen Morrison*

STEPHEN D. MORRISON, III
Georgia Bar No. 700828
smorrison@atclawfirm.com
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
One Sugarloaf Centre
1960 Satellite Boulevard
Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

***Attorneys for Plaintiff***

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Century Schoolbook, 13-point font.

**ANDERSEN, TATE & CARR, P.C.**

*/s/ Stephen Morrison*
STEPHEN D. MORRISON, III
Georgia Bar No. 700828
smorrison@atclawfirm.com

# EXHIBIT A

**DECLARATION OF TERESA MAUREEN CABALLERO**

Teresa Caballero, pursuant to 28 U.S.C. § 1746, and subject to the penalties of perjury declares as follows:

1. My name is Teresa Caballero. I am more than twenty-one years of age, competent to testify, and have no legal or mental disability. This declaration was executed in the state of Florida, where I am currently located.

2. I lived at a hotel formerly branded as a Days Inn and located at 3585 Chamblee Tucker Road, Atlanta, Georgia. I lived there for about a year around 2005 to 2006 with my young son and dogs.

3. I am familiar with at least one of the owners of the hotels. His last name was Patel and went by an American name, Mike. He had a relationship with a woman who also lived at the hotel. She used crack cocaine and was a prostitute.

4. There were lots of prostitutes, pimps, and drugs at the Days Inn. It was a very sleezy hotel and living there was the worst time of my life. There were a lot of bad things that happened at the hotel. I saw people buying and using drugs on the property out in the open. People would constantly come to the hotel looking for a place to get high. I saw more than a dozen used condoms near the property. Even though I saw a lot of crime at the hotel, there were never police or security.

5. I saw girls and women standing around the parking lot of the hotel in revealing clothing trying to pick up dates. They were dressed like prostitutes wearing shear clothes, short dresses, and lots of makeup. The owner, Mike, would provide empty rooms for prostitutes to use and get ready.

6. When I live there someone slit my tires while my car was in the parking lot during broad daylight because I would not let her smoke crack in my hotel room. I reported it to the hotel staff and they didn't do anything about it. They didn't care. I called the police. Mike threatened to have my car towed after it was sitting there because I couldn't afford to fix it. I was forced to sell it to one of the girls that Mike appeared to be romantic with.

7. Another time, someone broke down the door to my hotel room on a weekend night while I was at the hospital. The hotel staff didn't do anything about that crime.

8. There was a lot of traffic going in and out of the rooms all day and night for sex and drugs. I noticed them walk past my room. Buyers would drive up, go to rooms for a short period of time, and leave.

9. I have read this Declaration consisting of 9 numbered paragraphs and I declare under penalty of perjury that it is true and correct.

Executed on March 26, 2026.

Signed by:
[signature]
D58620B0B4DA47D...

Teresa Caballero

# EXHIBIT B

# DECLARATION OF JESSE MILLER

Jesse Miller, pursuant to 28 U.S.C. § 1746, and subject to the penalties of perjury declares as follows:

1. My name is Jesse Miller. I am more than twenty-one years of age, competent to testify, and have no legal or mental disability. This declaration was executed in the state of Georgia, where I am currently located.

2. I resided at the Motel 6, formerly located at 3585 Chamblee Tucker Road, Atlanta, Georgia, off and on for approximately one and a half years beginning in 2012. I was also employed as a grounds man and head of housekeeping while living at the Motel 6. My job included conducting maintenance, supervising cleaning, and checking on rooms.

3. There were lots of prostitutes, pimps, and drugs at the Motel 6. I saw women in rooms or walking around at the Motel 6 wearing revealing clothing, like short dresses and makeup. Sometimes they picked up dates from a club down the street, from another guy bringing a date to the room, or from guys who saw them walking around the hotel. It was obvious prostitution was happening.

4. You also knew that prostitution and pimping was happening because there were men who would rent multiple rooms or rent rooms for short period of

time. Often they were side-by-side and connecting rooms. The men wouldn't stay long and were always coming and going from these rooms.

5. Hotel management knew there were safety and security problems at the hotel. They knew that drugs, prostitution, and crimes were happening. The hotel had security cameras and staff were able to see everything that was happening at the hotel on cameras or by walking around. One of the owners also ran another hotel nearby and would come and go from both locations. Management seemed to be entertained by it or ignored it. They joked about women being "hos" and "prostitutes." They didn't do anything about the prostitution or other crime at the property. They only cared about getting paid for the rooms. Hotel employees also would "flip rooms" for cash, renting them for short periods of time for an hour or less at a time.

6. There was no training or policy about identifying the signs of sex trafficking or harms of prostitution at the hotel.

7. Management had a policy to prevent guests or employees from calling the police. They didn't want attention at the hotel, especially from the police. They thought law enforcement presence would make people not rent a room. They wanted to handle any problems themselves.

8. I have read this Declaration consisting of 8 numbered paragraphs and I declare under penalty of perjury that it is true and correct.

Executed on March 25, 2026.

DocuSigned by:

4802890AE8B344F...

Jesse Miller

# EXHIBIT C

**DECLARATION OF QUA'SHANA PORTER**

Qua'shana Porter, pursuant to 28 U.S.C. § 1746, and subject to the penalties of perjury declares as follows:

1. My name is Qua'shana Porter. I am more than twenty-one years of age, competent to testify, and have no legal or mental disability. This declaration was executed in the state of Virginia, where I am currently located.

2. I stayed at the Motel 6 formerly located at 3585 Chamblee Tucker Road, Atlanta, Georgia, for about two years beginning around or after 2013. I lived there with my family. My mom's partner worked for the hotel as a maintenance worker.

3. The hotel was a bad place full of prostitutes, pimps, and drugs. The most drug and prostitution activity happened at night and picked up on the weekends. There were people constantly coming and going at the hotel to buy sex and drugs.

4. Pimps hung out around the hotel and rented a room for multiple girls. The girls would come out of the room the pimp rented. They would go down to a car where men were waiting or men would come up to the room where girls were waiting. I saw the girls and pimps exchange money and drugs at the hotel.

5. The hotel was full of prostitutes, some women my age or younger, some older. Many of the women dressed in skimpy clothes, mini skirts, halter tops, and high heels.

6. The girls would walk around the nearby Kroger and pool hall where they would pick up dates. It was obvious to anyone that saw it that they girls were being sold for sex.

7. I saw random people pull up to the hotel all the time. They would go into a room and come out after a short period of time. There was also a lot of foot traffic going in and out of the rooms all day and night for sex and drugs.

8. The hotel had a reputation with the staff for being littered with used condoms. I also saw used condoms all over the hotel property.

9. It was obvious that there was a lot of commercial sex and drug activity at the hotel. Some of the staff at the hotel were involved in selling sex and drugs. The hotel and its management knew about it but didn't really do anything to stop it.

10. I have read this Declaration consisting of 10 numbered paragraphs and I declare under penalty of perjury that it is true and correct.

Executed on April 10, 2026.

Signed by:
Qua'Shana Porter
C2245C8D34A54CE...

Qua'shana Porter